# BOARD OF SUPERVISORS OF HENRY COUNTY

## *v.*

# THE WINNEBAGO SWAMP DRAINAGE COMPANY *et al.*

1. LIMITATIONS—*how availed of.* The bar of the statute of limitations may be availed of, in chancery, by demurrer, where it appears from the face of the bill.

2. SAME—*in equity.* Equity follows the law in the application of the statute of limitations. So, where a remedy at law, in case one existed, would not be barred, neither would the remedy in chancery, in respect to the same contract.

3. SPECIFIC PERFORMANCE—*where a part of the conditions of a contract remain unperformed.* Where parties enter into a written agreement to convey by deed, one to the other, certain pieces of real estate for and in consideration of the grantee's execution of certain promissory notes, and of certain conditions to be by him afterwards performed, the giving of the deed and the execution of the notes, in pursuance of the agreement, does not destroy or render invalid the remaining portions of the agreement, but the same are still binding and may be enforced. They are not like conversations which precede a written agreement, and are supposed to have merged in the same or been abandoned.

4. AGENCY—*ratification by the principal.* Where an agent was empowered, originally, to make a contract for the conveyance of lands of the principal, upon certain conditions, and, in making the contract, the agent added other conditions favorable to his principal, not mentioned in his original authority, and which were afterwards, and before the conveyance of the lands, approved by the principal, who directed the agent to convey according to the conditions so expressed: *Held,* that such action of the principal was a ratification of the act of the agent, in respect to such new conditions, and their binding effect upon the other party to the contract could not be questioned for the want of authority in the agent to insert them.

5. SAME—*when a party is estopped to deny agent's authority.* And the party to whom the lands were to be conveyed under such agreement, having acceded to the new conditions by entering into the agreement containing them, and accepting the deed in pursuance thereof, would be estopped to deny the authority of the agent in respect thereto.

6. TRUST—*when it arises in respect to swamp and overflowed lands.* Where swamp and overflowed lands, granted by the general government to the State, and by the State to the several counties, are conveyed by a county to an incorporated company, on the condition that the grantees shall drain the lands, the latter take the lands burdened with the trust arising under such condition, and a court of equity may enforce its execution.

7. SAME—*executing a trust cy pres.* The court of chancery will, in a class of public charities and trusts, rather than permit the trust to fail, and in furtherance of the object contemplated in creating the trust, devise a plan for its execution, in the absence of any mode being prescribed by the party declaring the trust.

8. But such jurisdiction will not be exercised in all cases; it is only when the trust can be executed by the employment of the ordinary agencies to which the court can readily and practically resort, that it will undertake to execute the trust *cy pres.*

9. So, where a board of supervisors of a county conveyed the swamp lands of the county, one of the conditions of the conveyance being, that the grantee should drain the lands, so far as the same might be practicable, notwithstanding the vagueness and uncertainty as to the mode in which the grantee should execute the trust arising from such condition, a court of chancery would not devise a plan for executing the trust, by reason of the impracticability of the court employing the necessary agencies required in the accomplishment of the object of the trust.

10. SAME—*failure of trustee to execute the trust—rescission.* But in such case, the court will not permit the trust fund to be wasted and misapplied. The trust remaining unexecuted by the grantees, and they having sold a portion of the lands, and divided the residue among themselves, the court will take the trust in charge and restore the fund to the former trustees, the

county authorities, to be by them applied in the execution of the trust. The grantees having violated their contract in respect to the trust, it should be rescinded, and they required to account for the fund.

11. CONSIDERATION—*mutuality*. Where a county conveys its swamp and overflowed lands, for a certain sum of money agreed to be paid by the grantee, and upon the condition that he shall drain and reclaim the lands conveyed, there is such mutuality of consideration, that the county may enforce the performance of the condition respecting the drainage of the lands.

12. PARTIES—*in chancery*. Where the board of supervisors of a county entered into a contract to convey the swamp and overflowed lands belonging to the county, for a certain sum of money, and upon condition the grantees should drain the lands conveyed, such board may maintain a bill in chancery against the grantees, to assert and enforce the rights of the county concerning the subject of such condition, and the trust arising in respect thereto.

13. And although such grantees may have sold and conveyed a portion of the lands before suit brought, yet the original grantees, or their representatives, are the only necessary parties defendant to such a bill.

APPEAL from the Circuit Court of Henry county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

The opinion sufficiently states the case.

Messrs. SHAW & CRAWFORD, for the appellants.

Messrs. BENNETT & VEEDER, Mr. GEORGE E. WAIT and Mr. IRA O. WILKINSON, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, brought by appellants, in the Henry circuit court, against appellees, for a specific performance of a contract entered into by the parties for the drainage of the swamp and overflowed lands in Henry county. The bill alleges that the general assembly, by an act adopted on the fourteenth day of February, 1855, incorporated appellees as The Winnebago Swamp Drainage Company, with the powers necessary to accomplish the purposes of their creation;

that the general assembly, having given the lands to Henry county, and to reclaim the lands, and to add to the salubrity of the adjacent country, the county entered into an agreement with the company, by which the latter undertook, by a proper system of drainage, to reclaim the lands; that, for the purpose of carrying out the arrangement, the county conveyed the lands to the company, who agreed to perform the labor and pay the county the sum of $20,000, to be paid in ten years, with interest; that the company had failed to construct the work, but had divided the lands among the members of the corporation, without the members paying any consideration for the same; that a portion of the members of the corporation had died, but that their share had descended to their children and heirs; that the stockholders had sold a part of the lands.

The bill prays that defendants be required to perform their agreement by draining the lands, and on their failing to do so, that such lands as have not passed into the hands of innocent purchasers be sold, and the proceeds be placed in the hands of a receiver, to be by him paid to the drainage commissioners of the several towns in which the lands are situated.

Appellees demurred to the bill, and assign as causes, that the relief sought is barred by the statute of limitations; that appellants sold the lands to appellees for general revenue purposes, and thereby parted with all control over the subject of their drainage; that appellants can, in no event, maintain the suit; that specific performance can not be decreed under the contract, for the want of mutuality between the parties, and because the contract is too vague, uncertain and indefinite to be enforced; that to grant the prayer of the bill, the court would have to make a contract for the parties, and for want of proper parties. The court below sustained the demurrer, and rendered a decree dismissing the bill, and the record is brought to this court to reverse that decree.

We shall consider the grounds of demurrer in the order in which they are specified. It, at one time, seems to have been held that the bar of the statute of limitations could not be insisted upon by demurrer, but must be interposed by way of plea, but the doctrine is now settled that, if it appears on the face of the bill, and no circumstances are alleged to take the case out of the statute, the bill will be obnoxious to a demurrer. Story's Eq. Pl. sec. 503, 751. It appears, from the allegations of the bill, the contract was entered into in March, 1856. From an examination of the agreement, it appears no time was fixed within which appellees were to complete the drainage of the lands referred to in the agreement. But, even if it was, there has not been such a lapse of time as would bar an action at law on the written agreement. A suit could be instituted on it at any time within sixteen years after a default had occurred. A suit in equity will always lie when an action at law would not be barred. Equity follows the law in regard to the application of the statute.

It is next urged, the county sold the lands for general revenue purposes, and thereby lost all control over their drainage, or right to insist upon appellees proceeding to drain the same. It appears the parties entered into an agreement on the eighth of March, 1856, by which the county agreed to convey the lands to appellees, and they agreed to execute their notes for $20,000, secured by a mortgage on the lands, and to drain the lands, so far as the same might be practicable. This was the consideration of the purchase. In pursuance of the agreement, the county conveyed the lands and the deed was accepted. The county, no doubt, sold the lands at a reduced price in consideration that the drainage should be made. There was, no doubt, a large deduction made for that reason. It may have been, and we can well presume it was, the controlling consideration for the conveyance.

Here was a large body of lands which were swamp and overflowed, and until reclaimed not only useless, but calculated to produce disease. By reclaiming them, the health of that

county would, no doubt, be improved, and the land become productive, and not only the health, but the prosperity of the county advanced. And here was a large trust fund, in the hands of the county, to be managed by its authorities for this or other purposes. We can see that they would be anxious to accomplish the purpose, and at the same time increase the county revenues. We must conclude that appellees believed the lands were worth the cost of drainage and $20,000, and that they so regarded it, is manifest from their agreement with the county. The agreement to drain these lands entered as fully into and formed a portion of the consideration for the conveyance as did the money they agreed to pay. The agreement renders this so manifest that there is no possible escape from the conclusion. The parties have, in terms, said it was, and reasoning can not render it plainer or more conclusive. This is not like conversations which precede a written agreement, and are supposed to have merged in the agreement, or been abandoned, and hence can not be shown to vary or contradict the writing. In this case, the agreement was written and consummated by the parties, and the execution of the deed and notes was in pursuance of, and not to the destruction of the agreement. After they were executed, the other portions of the agreement were neither fulfilled nor destroyed. They remained in full force and binding as before.

But it is said that the agent inserted that part of the agreement without authority, he not being required, by the order appointing him to negotiate the contract. He was appointed by, and acting for the county as its agent, and there is no pretense that appellees were incapable of thus binding themselves to its performance, and they voluntarily entered into the agreement. After it was made, the agent reported the agreement to the board of supervisors, and they then authorized him to convey upon the terms of the agreement. Thus they fully ratified the agreement, and whether the terms of the agreement had been in the contemplation of the board previous to that time, did not matter, as they then ratified and

confirmed the terms of the agreement. And under the order of the board the agent could alone convey on those terms. And the presumption is, that appellees knew of the terms and conditions upon which he was authorized to convey, as his authority was a matter of record, and they accepted the deed upon those terms. But whether they did in fact, they knew that it was under and in strict pursuance to their agreement, and they are estopped from denying his authority, and must be held to have accepted the deed upon those terms and conditions

This property which the county held as a trust, then, passed to appellees, burdened with the charge of their drainage, and to that extent it was a trust fund. And it is charged that appellees have failed to relieve it of the charge they, by their agreement deliberately entered into, have placed it under. They have assumed the trust and have failed to perform it. The board of supervisors, being parties to the contract, and the original trustees, then, are the proper, and it may be the only, persons who may call on a court to have the trust executed or for an account of the trust fund. It hence follows, if appellants have otherwise shown equity, they have a right to have this trust properly administered. The board having the right to apply these lands to drainage or other purposes, could have executed the trust themselves through agents, and they could have applied all of the fund for drainage, or only a portion of it, either by themselves or through other trustees, whom they could select, and to whom they could convey the title. They have pursued the latter course, and have the right to see that the trust is properly executed.

What has been said disposes of the objection, that the board of supervisors can not maintain this suit. In fact, that objection is contained in the preceding objection.

It is next urged, that a specific performance can not be decreed because there is not mutuality of consideration. We see no force in this objection. There seems to have been mutuality of consideration, ample and sufficient. On the part

of appellees, they received from the county a large quantity of lands which they say, by their agreement, are worth $20,000, and the expense of draining them, so far as is practicable. On the part of the county, it was to receive that sum of money and the drainage of these lands. The board of supervisors are the agents of the county, and as such attending to its affairs and performing the duties imposed upon them, to promote the welfare of the inhabitants of that political division. And holding these lands as a trust fund for the county, they had a right to apply all or a portion of the value thereof to the drainage of the same. And they had the same right to have the drainage performed by the application of the lands or a part of the proceeds, or to sell the lands and apply the proceeds arising from such sale.

We now come to the consideration of the question, whether the agreement is too vague and uncertain to admit of its specific performance. Counsel for appellants seem to concede that it is, but urge that as it is a public trust fund, the court should execute the trust *cy pres*; that the court, in such cases, rather than permit the trust to fail, will, in furtherance of the object contemplated by the parties, in creating the trust, devise a plan for executing the trust which the parties have failed to adopt and specify in declaring the trust. That the court has such a jurisdiction in a class of public charities and trusts, seems to be undeniable; but it does not follow that the court can and will do so in all cases. It is only where the trust can be executed by the employment of the ordinary agencies to which the court can readily and practicably resort. But it can not do so in numerous cases, from the fact that courts can not use the agencies indispensable to their accomplishment, or if employed would not, in all reasonable probability, accomplish the end.

In this case the court is urged to adopt and execute a plan *cy pres*. And to do so, it is obvious that the court, from the very nature of the trust, would be compelled to employ a corps of

engineers, to survey and report plans, specifications and estimates of cost of construction. It would then have to choose a plan, employ agents and laborers, or let the contract, by biddings, to contractors for the performance of the work; then employ agents, engineers and superintendents to carry out the plan. In other words, the court would have to organize all of the necessary means for an extensive internal improvement. Such would not be adapted to the organization of a court of chancery, and could never be practically carried into effect. To do so with any reasonable hope of success, the court would have to remain in daily session during the progress of the work, for the purpose of making orders and the change of plans and other necessary directions in the prosecution of the work. Such a course would be impracticable. We are aware of no precedent for such a course in this class of cases, and could one be referred to, we would hesitate to follow it on account of the complications and impracticable character of such a course.

But being a trust fund, which remains unappropriated and the trust unexecuted, a court of chancery will so far take it in charge as to prevent it from being wasted or misapplied, and will restore it to the former trustees, to be by them applied to the execution of the trust. In this case the legislature entrusted the use of this fund to the board of supervisors, to be used for the purpose of drainage or otherwise. That body is better adapted to the execution of the trust, than is a court of chancery, and all that equity can do is to restore the fund, and permit the board of supervisors to use and appropriate the fund as was the design of the legislature when the title was vested in the county.

Appellees have received this large fund; have paid but a part of the consideration, and have failed to execute the trust that was reposed, as the remainder of the consideration agreed to be given for the land. They then have trust funds, for which they have failed to render the services agreed to be performed for a large portion of the fund. Having failed to

perform their agreement, and broken their contract, it should be rescinded, and they required to account for the fund which they have received, and for which they have failed to render the consideration. They have no pretense of right to hold this fund, according to the allegations of the bill, which the demurrer admits to be true.

The objection that the court can not grant the relief asked, without making a contract for the parties, has been sufficiently considered in what we have already said, and its further discussion is unnecessary.

As to the objection that there is a want of proper parties, we fail to see the force of the objection. The original grantees, or their representatives, are made parties, and none other are necessary to a decree doing complete justice between the parties in interest.

The drainage company having received the lands, as we have seen, for a money consideration, and upon an agreement to drain them, and having permitted a number of years to elapse without performance on their part, and they having divided the lands among members of the company years since, they have thus practically put it out of their power to perform their contract, or at least shown no disposition to keep their agreement. The court may, therefore, treat the contract as repudiated by the drainage company, and require it, or the members who composed it, and who have received and appropriated the fund, to account to the county for the property itself, if not sold and disposed of to purchasers; and, when such sales have been made, to account for the money received thereon, and require each member to reconvey such portion of the lands as he may hold. But, in stating the account, appellees should be allowed for all moneys paid to the county on the contract, and for all money expended for the purposes of drainage under the agreement. If, on the coming in of the answer and the hearing of the proof, the allegations of the bill should be proved, then appellants would be entitled to the relief indicated in this opinion.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*