THE PEOPLE *ex rel.* John Fitzgerald, State's Attorney,

*v.*

JOHN BOYD *et al.*

*Filed at Ottawa January 21, 1890.*

1. QUO WARRANTO—*as a civil remedy.* The proceeding by informa-·tion in the nature of a *quo warranto*, whatever it may have originally been, is now regarded as in the nature of a civil remedy. It lies to· enforce both public and private rights.

2. LIMITATIONS—*in quo warranto.* The Statute of Limitations applies· to the remedy or action by *quo warranto*, at least when its object is to· enforce private rights as distinguished from public rights. In addition to this, the writ will be refused, even before the Statute of Limitations· runs, in certain cases, when the object sought is to enforce private rights, and in some other proper cases when public policy requires that the writ should not issue. The limitation of five years was applied in this case.

3. SAME—*how the statute availed of.* The Statute of Limitations may· be interposed by demurrer, where the petition or declaration discloses· the proper facts to raise the question.

APPEAL from the Appellate Court for the Second District ;— heard in that court on writ of error to the Circuit Court of Kendall county; the Hon. C. W. UPTON, Judge, presiding.

Mr. JOHN FITZGERALD, and Messrs. FOWLER BROS., for the appellant:

A proceeding by *quo warranto* is a criminal prosecution.. *Donnelly* v. *People*, 11 Ill. 552 ; *People* v. *Railroad Co.* 13 id. 67 ; *Burnap* v. *Marsh*, id. 541.

When brought to test the validity of a school district, it· affects a purely public right. *Chesshire* v. *People*, 116 Ill. 493 ; *People* v. *Golden Rule*, 114 id. 34.

The conditions necessary to the application of the principle· of estoppel do not exist in this case. The public, by a simple acquiescence, alone, can not be estopped from showing the· absolute want of authority to do the thing complained of. In.

:all the cases we have been able to find, the doctrine has only been applied where something has been done that was an inducement, and brought about the conditions as they exist. To say that any number of persons assuming to act for a municipal corporation, without any legal right so to do, can ·estop the public from any attempt to correct the evil after the lapse of five years, is, it seems to us, a dangerous prin- ·ciple, and one that, so far in our jurisprudence, has no prece- dent.    *Wismer* v. *Village of Douglass,* 64 N. Y. 91; *McPherson* v. *Foster,* 43 Iowa, 48; *South Ottawa* v. *Perkins,* 94 U. S. 260; *Beloit* v. *Morgan,* 7 Wall. 619.

The only mode in which the illegality in the formation of a ·school district can be inquired into or taken advantage of, is by information in the nature of a *quo warranto.*    *Trumbo* v. *People,* 75 Ill. 564; *Renwick* v. *Hall,* 84 id. 163; *Alderman* v. *School Directors,* 91 id. 180; *People ex rel.* v. *Newberry,* 87 id. 41.

Statutes of limitation do not apply to the public unless so ·expressly provided, nor to public interests or trusts.  High on Ex. Legal Rem. 458;  2 Dillon on Mun. Corp. secs. 532, 533; *Alton* v. *Transportation Co.* 12 Ill. 38; *Lee* v. *Mound Station,* 118 id. 304; *Belleville* v. *Stookey,* 23 id. 441; *State Bank* v. *Brown,* 1 Scam. 106; *DesMoines* v. *Harper,* 34 Iowa, 84; *People* v. *Gilbert,* 18 Johns. 226; *Mills* v. *Hall,* 9 Wend. 315; *People* v. *Cunningham,* 1 Denio, 536; *Commonwealth* v. *Upton,* 6 Gray, 476.

Mr. CHARLES WHEATON, and Mr. R. P. GOODWIN, for the appellees:

The statute is, that all civil actions not otherwise provided for shall be brought within five years after the cause of action accrues.    Rev. Stat. chap. 83, sec. 15;  *Quayle* v. *Guild,* 91 Ill. 378; *Hancock* v. *Harper,* 86 id. 445; *Pierce* v. *McClellan,* .93 id. 245.

That *quo warranto* is a civil action, see High on Ex. Legal Rem. 425, sec. 603; *People* v. *Shaw*, 13 Ill. 581; *Ensminger* v. *People*, 47 id. 385.

That the statute runs against the public, see *Board* v. *Gordon*, 82 Ill. 435; *Edwards* v. *White County*, 85 id. 390; *Hamilton* v. *McNeill*, 13 Gratt. 389; *Hooker* v. *Sterling*, 36 Pa. St. 423; *City of Paris* v. *Johnston*, 56 Ill. 45.

At common law the writ could not be brought after the lapse of twenty years, and the allowance of the writ in that time was discretionary. (*Winchelsea-Causes*, Burr. 1962; *Rex* v. *Stevens*, id. 433; *Rex* v. *Wardroper*, id. 1963; *Rex* v. *Daws*, id. 2120; *King* v. *Stacy*, 1 Tr. 1; *King* v. *Mohing*, 3 id. 310.) Subsequently the English courts reduced the period of limitation to six years. *Rex* v. *Dickens*, 4 Tr. 282.

That municipal corporations are within the Statute of Limitations, the same as natural persons, see *Dudley* v. *Trustees*, 12 B. Mon. 610; *Knight* v. *Heaton*, 22 Vt. 480; *Vaack* v. *Cor. of New York*, 4 Johns. 53; *Litchfield* v. *Wilmot*, 2 Root, 288; *Beardslee* v. *French*, 7 Conn. 125; *City of Richmond* v. *Poe*, 24 Gratt. 149; *Cotton Mills* v. *Town of Manchester*, 25 id. 825; *Levassor* v. *Washburn*, 11 id. 572; *Armstrong* v. *Dalton*, 4 Dev. 368; *Bowen* v. *Learn*, 6 Rich. 298; *State* v. *Petter*, 7 id. 390; *Clemants* v. *Anderson*, 46 Miss. 581; *City of Vicksburg* v. *Marshall*, 59 id. 563; *City of Galveston* v. *Menard*, 23 Texas, 349; *County of St. Charles* v. *Powell*, 22 Mo. 525; *School Directors* v. *George*, 50 id. 194; *Rowan* v. *Town of Portland*, 8 B. Mon. 232; *Alvin* v. *Town of Henderson*, 16 id. 131; *City of Cincinnati* v. *Evans*, 5 Ohio St. 594; *Lake* v. *Kennedy*, 13 id. 42; *City of Cincinnati* v. *First Presbyterian Church*, 8 Ohio, 298; *Burlington* v. *Railroad Co.* 41 Iowa, 134.

The Statute of Limitations can be interposed by demurrer where it appears on the face of the pleading. *Ilett* v. *Collins*, 103 Ill. 74; *International Bank* v. *Jenkins*, 104 id. 143; *Bell* v. *Johnson*, 111 id. 374; *Henry County* v. *Drainage Co.* 52 id. 454.

Per CURIAM : In the Appellate Court, the following statement of the case and opinion were filed by LACEY, P. J. :

"This was an information for *quo warranto*, filed by the State's attorney of Kendall county, in the circuit court of that county, on the 27th day of July, 1887, against the appellees, to compel them to show cause by what right they claimed to hold the office of directors of school district No. 1, town 37 north, range 7, east of the third principal meridian, in said county. At the January term of said court, the appellees appeared and demurred to the information. The court below sustained the demurrer, holding the application to be insufficient, and rendered judgment in favor of appellees on demurrer, from which judgment appellant has sued out a writ of error from this court seeking a reversal of the said judgment.

"The information alleges, that prior to April, 1882, school district No. 1, aforesaid, was comprised of territory in the said township No. 37, and the north half of section 5 and the northwest quarter of section 4 in township No. 36, north, range 7, east of the third principal meridian, in said county, and for more than twenty years last past, prior to 1882, the directors of school district No. 1, aforesaid, received and appropriated to the use and benefit of said district No. 1 the school taxes levied upon and collected from the territory embraced in said town 36 belonging to said school district No. 1, as aforesaid, including taxes collected from the personal property of residents of said district No. 1, aforesaid, residing in said town 36, and the benefit and advantages so arising from the taxes so collected had been enjoyed by the citizens of said district for and during all that time ; and the State's attorney aforesaid further gives the court to understand and be informed, that for more than twenty-six years last past, prior to 1882, school district No. 3, township 37 north, range 7, aforesaid, was comprised of territory and lands described as follows, to-wit: Sections 28, 29, part of section 30, of the south-west quarter of section 27, all of sections 32 and 33 north of Fox river, in

said town aforesaid.   The State's attorney further gave the
court to understand, that on the 3d day of April, 1882, an
attempted consolidation of said school districts Nos. 1 and 3
was made, and resulted in the formation of a pretended district
No. 1, town 37 north, range 7, east of the third principal
meridian, comprising lands aforesaid in townships 36 and 37
aforesaid; that on or about said 3d day of April, 1882, a peti-
tion praying for a consolidation of said districts was presented
to the trustees of schools of said township 37; that on the
13th day of April, 1882, said petition was acted on and the
prayer thereof granted, and the said consolidation of the said
two districts attempted and pretended to have been made, and
from that time to the present its pretended school officers have
received and appropriated to its school purposes the school
taxes from the whole of said territory lying in said two town-
ships aforesaid, illegally, and without any warrant or author-
ity of law, and have assumed to perform the duties of school
directors of said district No. 1 as so pretended to be formed,
and have collected and have received taxes, contracted indebt-
edness, and have imposed taxes on the whole of said pretended
district without warrant of law.

"For points of illegality, the information shows, in sub-
stance, that—

"1st.   The petition praying for consolidation was never pre-
sented, as required by statute, to the trustees of schools of
township 36, aforesaid, and such trustees never acted on such
petition or upon the attempted consolidation, but the alleged
consolidation was wholly made by the trustees of schools of
township 37, aforesaid.

"2d.   Said petition was not filed with the trustees of schools
of said township 37 twenty days before the regular meeting
in April, 1882.

"3d.   No notice of said petition was filed or copy delivered
to the president or clerk of the board of directors, or either of
them, of said districts 1 and 3, as required by law, and the

school directors of district No. 1 had no notice of the presentation of said petition to said board of trustees, or of the time and place when and where said petition was to be acted upon by said board of trustees.

"4th. The clerk of the board of trustees of said township 37 did not make a complete copy of said action of the trustees, certified by the president of the board of trustees and clerk, and file the same, together with a map of the township showing the districts, and an actual list of the tax-payers of the newly arranged districts, with the county clerk, within twenty days of the action of the trustees.

"5th. That the said trustees failed to order an election within fifteen days, to elect a board of directors of said newly formed district, after the action forming the district, or give ten days' notice of such election, as required by the statute.

"6th. The board of trustees failed to make any order of the action upon said petition, or file the same as required by statute, or make any legal record of their action on said petition.

"7th. The regular meeting of the board of trustees was on the 3d day of April, 1882, and the petition was not acted upon by said board on the 13th, as required by statute.

"8th. The petition was insufficient in law, in that it did not aver that said change and consolidation was petitioned for by a majority of the legal voters of each of said districts affected by the proposed change, or by any legal voters; nor that the change and consolidation was petitioned for by two-thirds of the legal voters living within certain territory to be affected by said change and consolidation; nor by two-thirds of the legal voters living within certain territory containing not less than ten families, asking that said territory be made a new district; nor that the territory to be affected by said change and consolidation contained not less than ten families; nor that the people of said district were not properly accommodated with school facilities and privileges, but would be by the proposed change; and the said petition did not contain any

5—132 ILL.

or a proper description of the territory to be affected by the proposed change and consolidation.

"The above are all the causes relied upon as showing the illegality of the new district.

"Lacey, P. J.: The appellees question the sufficiency of the information in the respect that it does not show upon its face, in proper legal form, any grounds of illegality in the proceedings and formation of the new district, No. 1. But we are inclined to think that at least some of the causes (though not all) set out are in legal form, and would be sufficient if the information had been filed in apt time. As the decision of the case hinges upon whether the Statute of Limitations is a bar to the prosecution of the information, or whether, if not strictly a bar to all *quo warranto* proceedings, the lapse of time in this class of cases is not a sufficient ground to deny the writ, we will not further occupy our time in consideration of the questions raised as to the sufficiency of the petition on its merits, in case of its having been filed in proper time.

"It is insisted on the part of appellees, that the *quo warranto* is a civil action, and that the Statute of Limitations of five years runs against it. (Rev. Stat. sec. 15, chap. 83.) This section provides, among other things, 'that all civil actions not otherwise provided for shall be commenced within five years next after the cause of action accrued.' It is also claimed, and the position is not controverted, that the Statute of Limitations may be interposed by demurrer where the petition or declaration discloses the proper facts,—as in this case,—to raise the question. (*Henry County* v. *Winnebago Drainage Co.* 52 Ill. 454; *Ilett* v. *Collins,* 103 id. 74; *International Bank* v. *Jenkins,* 104 id. 143; *Bell* v. *Johnson,* 111 id. 374.) On the other hand, the appellant replies, that the question involved here respects public rights, and is prosecuted by the State's attorney in his official capacity, and that the Statute of Limitations will not run against a proceeding of this kind, and, as showing this to be a question respecting public rights, cites

*Chesshire* v. *People ex rel.* 116 Ill. 493. The appellant also cites from the opinion of the court in *Logan County* v. *City of Lincoln*, 81 Ill. 158, the following passage, to-wit: 'Our understanding of the law is, that; as respects all public rights, or as respects property held for public use, upon trusts, municipal corporations are not within the Statute of Limitations.'

"The question presented involves a consideration of the nature and character of a *quo warranto* proceeding. In the first place, what is the nature of the action? Is it civil or criminal? If civil, does the above Statute of Limitations apply to the action in all cases, or in any case? Is the writ one of right, or the issuance of it within the sound discretion of the court, regulated by law and precedent?

"In the first place, we think there can be no question but that the action is at this day, however it formerly might have been, regarded by the law as in the nature of a civil remedy, and has been so decided by the Supreme Court of this State. (*People* v. *Shaw*, 13 Ill. 581; *Ensminger* v. *People*, 47 id. 384.) The *quo warranto* proceeding is used to enforce both public and private rights. Its purpose is dual, and the law as regards the Statute of Limitations ought to, and we think does, apply to the action, at least where its object is to enforce private rights as distinguished from that to enforce public rights; and in addition to this, the writ will be refused, even before the Statute of Limitations runs, in certain cases, where the object sought is to enforce private rights, and in some other proper cases, and public policy requires that the writ should not issue in such cases. As showing how the question has been regarded at common law, we will quote some extracts from the decisions of distinguished English judges, and passages from text books.

"In *King* v. *Stacey*, 1 Durn. & East, 1, Lord Mansfield says: 'I remember when it was the practice to grant *quo warranto* information as a matter of course, * * * but now, since these matters have come more under consideration, it is no longer a matter of course, and the courts are bound to consider all the

circumstances before they disturb the peace and quiet of any corporation. The next thing the court took into consideration was the length of time within which they would grant information. It was customary to never refuse for àny length of time, but as the inconvenience and vexation of this were plainly perceived, the court were desirous to go by a certain rule, and therefore the time was indefinite by the common law, and fixed by no statute. They drew a line, by analogy, by the Statute of Limitations in ejectment. They drew it for twenty years, and this has been acquiesced in by the bar and Parliament, where it was once mentioned. * * * But when the court laid down the general rule, they also said that it may be refused within twenty years, upon other circumstances to warrant the court to say, You shall not make use of the king's name for such and such purposes. The court is bound to guard the corporations, etc. Yet the king may prosecute by his attorney general.'

"In *King* v. *Newling*, 3 Durn. & East, 171, BUTLER, Justice, said: 'Lord MANSFIELD has repeatedly said, that the meaning of the rule was, that let the case be what it might, if twenty years have elapsed the relator shall not be made to make any application whatever; but we all remember, from that time to the present, cases in which the court has refused to grant *quo warranto* information within that time,—as, where it appears the relator might have come sooner, or where a judgment against a defendant would tend to a dissolution of a corporation.' Afterwards, in *Rex* v. *Decken*, 4 T. R. 282, it was held that the Statute of Limitations of six years applied as against a person in peaceable possession of his franchise for six years. See, also, High on Ex. Rem. 692.

"In High on Extraordinary Remedies, sec. 603, it is said: "In modern times the remedy as a means of criminal prosecution has fallen into disuse, and has come to be regarded as a purely civil remedy, which, though partaking in some of its forms and incidents of the nature of criminal process, it is yet a strictly civil proceeding, resorted to for the purpose of test-

ing a civil right, by trying the official title to an office or franchise, and ousting the wrongful possessor.'

"It is said that the State's attorney, in this case, is prosecuting in his official capacity, and not for the benefit of any private person, and hence in this form the Statute of Limitations, or lapse of time, should not interfere to arrest the prosecution. This appears to be the form of the prosecution, yet we think the court will always look into the nature of the object sought to be obtained, rather than to the form of the prosecution, in determining the question of lapse of time and Statute of Limitations as applicable to the case. If the State's attorney should file information in his official capacity, when, in fact, he was only representing the private rights of an individual, the court would not be bound to so regard it, if the nature of the case and objects sought showed the contrary. This, we think, is clearly deducible from the opinion in *People ex rel. v. North Chicago Railway Co.* 88 Ill. 537. The proceedings in the case before us show exactly what the object sought is. Directly, it is to oust from office the three school directors named, and indirectly, to declare the district void,— and this would be the result if a judgment of ouster were rendered. The public undoubtedly has enough interest in the matter to entitle it to be called a public prosecution, to the extent that the State's attorney might omit the name of a relator, or he might proceed under the name of a relator, as was held in *Chesshire et al. v. People ex rel.* 116 Ill. 493. We apprehend the Statute of Limitations and the lapse of time would operate against the prosecution in a given case, in whatever form it might assume. If this were not so, form, and not substance, would govern the substantial rights of parties. It would seem to us that this case ought to fall within that class of cases where the Statute of Limitations should apply, and even the right to file the information should be refused, on the grounds of public policy, even before the lapse of five years, if the time elapsed were such as a wrong would be done by granting the writ.

"In the case of *Trustees of Schools* v. *School Directors*, 88 Ill. 100, an application for a writ of *certiorari*, in a case almost exactly like this, was refused, where only three years had elapsed after the consolidation of the districts into the one complained of, on the ground that there had been unreasonable delay in asking for the writ. The same was held in *Board of Supervisors* v. *Magoon*, 109 Ill. 142. The court say, in the first above named case, that after the consolidation 'the school funds were appropriated in accordance with such changes, and the presumption is that taxes for school purposes were thus levied and collected. It may be, also, that debts have been incurred in building or repairing school houses, or for other legitimate school purposes, upon the faith of the action of the trustees, now for the first time sought to be questioned. The case, in our opinion, is clearly one where, by reason of lapse of time and the acquiescence of the party now complaining, in the distribution of the school funds, the levy and collection of school taxes, and, possibly, the incurring of debts upon the faith of the action of the trustees, it was improper to allow the writ, but having been allowed, it should have been quashed on motion. It is better, if it shall be desirable, by appropriate steps, through the proper school officers, to re-organize the districts as they were before, than to open up an indefinite field of strife and litigation by now nullifying the action of the trustees, and thereby declaring everything done pursuant thereto illegal.'

"It will be noted, that the rules of law in regard to granting writs of *certiorari* are the same as to granting the information in *quo warranto* proceedings. The reasons for refusing the *certiorari* in that case are the same as present themselves here. In the case at bar, the information expressly avers that the directors of the new district, No. 1, have incurred and contracted debts. We do not have to resort to conjecture as to that fact. The reason for refusing such writs 'is because these bodies exercise powers in which the people at large are con-

cerned, and great public detriment or inconvenience might result from interfering with their proceedings.' (Ibid. 88 Ill. 100.) In other words, after a considerable lapse of time public policy forbids that discretionary writs like those in *quo warranto* and *certiorari* should be granted. In this case, more than five years have elapsed since the formation of the district in question, and during that time the majority of the people in the district had the power to change it, if they saw proper, to the original districts. In the language of the opinion of the Supreme Court above quoted, 'it is better, through the proper school officers, to re-organize the district, if it is desired, as it was before, than to open up an indefinite field of strife and litigation by now nullifying the action of the trustees, and thereby declaring every thing done pursuant thereto illegal.' If this information had been filed at once, appellant would have been entitled to file it, but, by lapse of time, we think the Statute of Limitations above quoted has run against it, and that if that were not the case, under the circumstances, the information at this time ought not to be allowed to be filed. We do not wish to be understood as deciding, because the question is not presented, that the Statute of Limitations above quoted, in all cases of information in cases of *quo warranto* would be a bar, but certainly in this case we think it would, and the courts, where the question is presented, may even apply it in all cases.

"The demurrer was properly sustained. The judgment of the court below is therefore affirmed."

We have examined this case in all its phases, and considered it in the light of all the reasons and authorities presented, as supporting the views of counsel for the appellant, and against those expressed in the foregoing opinion. We are convinced that the judgment of the Appellate Court is right, and should be affirmed. We are also satisfied with Judge LACEY's presentation of the law of the case.

*Judgment affirmed.*