CHARLES E. SOULE
*v.*
THE PEOPLE *ex rel.* Charles S. Cullen, State's Attorney.

*Opinion filed December 16, 1903.*

1. QUO WARRANTO—*when plea does not show organization of a town under act of 1845.* A plea to an information in the nature of *quo warranto* does not show the legal organization of a town under the act of 1845, where it fails to show two-thirds of the votes cast at the mass meeting of the inhabitants were in favor of incorporation.

2. SAME—*what does not show organization of village under act of 1872.* Legal organization of a village under the act of 1872 is not shown by a plea which fails to aver that thirty voters of the town petitioned for submission to the voters of the question whether such town should become organized as a village.

3. SAME—*when legal organization of a village cannot be attacked.* The organization of a village cannot be attacked by information in the nature of *quo warranto* to oust the village officers, where for over twenty years the village has in many ways exercised corporate functions with the acquiescence of the general public and without objection by the public authorities, during which time the inhabitants have acquired property rights based upon its legality.

4. PRACTICE—*when original documents will be stricken from files by Supreme Court.* Original documents not shown by the transcript of the record nor transmitted by order of the trial court under rule 12 of the Supreme Court, but transmitted by counsel to the clerk of the Supreme Court to be presented to that court for inspection, will be stricken from the files.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

JOHN H. ARMSTRONG, and BROWNE & WILEY, for plaintiff in error.

CHARLES S. CULLEN, *pro se.*

Mr. JUSTICE SCOTT delivered the opinion of the court:

This was an information in the nature of a *quo warranto*, filed in the circuit court of LaSalle county on March 5, 1902, in accordance with an order of the court granting leave which had been entered on that day. It questions the right of Charles E. Soule to hold the office

of president, and the right of J. W. Carr, William Callagan, M. L. Courtright, Louis Dondanville, L. M. Eaton and August Girolt to hold the offices of trustees of the village of Sheridan, in that county, and these seven persons were made respondents. The petition is in the usual form, but it appears from the petition for leave to file, that the charge of the usurpation of the offices in question is based upon the alleged fact that the village of Sheridan is not legally organized and is without a valid franchise. The respondents entered their appearance and filed two pleas to the information. To these pleas the People demurred. The demurrer was sustained to both pleas. The respondents abided their pleas, judgment of ouster was entered at the March term, 1902, of that court, and Soule alone sues out of this court a writ of error to review the judgment.

The only question is whether either of the pleas presented a good defense. The first plea seeks to show a valid organization of the village of Sheridan, and avers that on June 24, 1872, the inhabitants of the territory which is now within the limits of the alleged village of Sheridan organized such territory and the inhabitants thereof into a corporation or body politic by the name and style of "President and trustees of the town of Sheridan," under the act of March 3, 1845, and that thereafter, on July 26, 1873, an election was held in the said town of Sheridan for the purpose of organizing as a village under the City and Village act of 1872, and the plea contains averments intended to show an organization under that act. This plea was insufficient. The act of 1845 (Rev. Stat. 1845, sec. 1, p. 111,) provided for the inhabitants of a territory, upon proper notice, holding a mass meeting and voting upon the question whether or not they would incorporate as a town. The second section of the act provided that if two-thirds of the votes were in favor of incorporation the organization of the town should proceed. The plea fails to show that such pro-

portion of the votes was in favor of incorporating. The attempt to organize a village was under the statute of 1872. (Rev. Stat. 1874, sec. 178, p. 242.) Provision was made by that act for the submission to the voters of any incorporated town, by the president and trustees thereof, on the petition of any thirty voters in such town, of the question whether such town shall become organized as a village under that act. This plea does not aver that thirty voters of the town of Sheridan petitioned for the submission of this question, and therefore fails to show a legal organization of the village of Sheridan.

The second plea proceeds upon a different theory. It avers that at all times after the organization of the village on July 26, 1873, said village of Sheridan has been represented by a president and board of six trustees duly elected in accordance with the law; that during all that time the officers and authorities of said village have annually levied and collected village taxes and expended the same for municipal purposes, have duly passed, published and enforced village ordinances, and have erected and maintained a village hall and a prison; that public parks have been dedicated to said village, and are owned, improved and maintained by it; that a bridge had been erected within the limits of said village across the Fox river, and has been owned, maintained and repaired by said village since its construction, in 1874, with village taxes levied and collected for that purpose; that bonds and other evidence of indebtedness were issued by said village to obtain money to build said bridge, which bonds and evidence of indebtedness were paid by said village, acting as a body politic under the name and style of "The Village of Sheridan;" that by said name and style it has been sued in the circuit court of said LaSalle county, and by that name and style a judgment in that court was entered against it as a municipal corporation; that it has, by its name and as a municipal corporation, purchased valuable lands in said county, the deed con-

veying the same to it being of record in said county; that on November 1, 1874, the authorities of said village, acting as such, purchased lands within the limits of said village for a cemetery; that said lands were surveyed and platted into burial lots and the plat recorded in the proper office in LaSalle county; that on January 10, 1895, the authorities of said village made an addition to said cemetery, and caused the same to be platted and the plat thereof to be recorded in the proper office in said county. The plea avers that the respective State's attorneys of said county had notice of such suit, deeds and plats. It further avers that since the establishment of such cemetery the same has been maintained by the village and used exclusively for burial purposes; that the authorities of such village, acting as such, have sold to private parties numerous lots, which have been used for burial purposes in said cemetery; that the titles to said lots have been derived from the village of Sheridan; that by reason of the great *laches* in the commencement of this suit and the great injury and injustice which will result to private individuals who have acquired valuable property rights and interests from said village of Sheridan, and by reason of the great injury and injustice which will result to the inhabitants of said village, who have collected and expended large sums of money in maintaining said village as a body politic or corporate under the well founded belief that the same was duly and legally incorporated as such, as well they might infer from the actions and *laches* of the respective State's attorneys of said county during the period since July 26, 1873, and by reason of the premises, plaintiff should be barred from the further prosecution of the suit, and avers the election and qualification of the respondents to the respective offices with the usurpation of which they are charged by the information.

In *State* v. *Leutherman*, 38 Ark. 81, it was said: "The State herself may, by long acquiescence and by continued

recognition through her own officers, State and county, of a municipal corporation, be precluded from an information to deprive it of franchises long exercised in accordance with the general law."

*Jameson* v. *People*, 16 Ill. 257, was a *quo warranto*, instituted in 1855, to test the organization of the town of Oquawka, on the ground that the vote on the question of organization at the mass meeting held in April, 1851, was by ballot instead of *viva voce*. The organization of that town had been recognized by two acts of the legislature, and it was shown that after the mass meeting in 1851 the electors proceeded with the organization of the corporation; that town officers were thereafter elected from year to year; that it was generally recognized as a public municipal corporation; that it exercised the franchises and powers conferred upon such corporations by law, passed and enforced ordinances, levied and collected taxes and made contracts and incurred liabilities. This court there said: "Were we to hold, after this acquiescence of the public and these recognitions of the legislature, that the town remains unincorporated on account of some defect in its original organization as a corporation, what confidence could individuals have in the validity of securities emanating from these local authorities? * * * It would seem incompatible with good faith and against public policy, although irregularities may have intervened in the organization of the town, now to hold that it is not a body corporate, and we do not think the law requires us to do so."

*People* v. *Boyd*, 132 Ill. 60, was an information for *quo warranto* against school directors, the charge being that the school district was not properly organized. In that case the school district had been exercising corporate powers as such for a period of five years. This court denied the remedy on account of the lapse of time, and it was said, after a discussion of authorities and a reference to the great public inconvenience that would result

from a judgment of ouster, that "it would seem to us that this case ought to fall within that class of cases where the Statute of Limitations should apply, and even the right to file the information should be refused on the grounds of public policy, even before the lapse of five years, if the time elapsed were such as a wrong would be done by granting the writ."

In *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs.* 151 Ill. 204, the right of the park commissioners to exercise corporate powers over a certain street was in question, the objection being to the validity of the proceeding under which they came into control of the street. The commissioners had been in control thereof for over twelve years, and during that time the public authorities of the city of Chicago exercised no jurisdiction over the street, but, together with the general public, acquiesced in the control thereof by the commissioners, and this court said (p. 216): "Whatever irregularity or informality may have intervened, such as is shown upon this record, has been cured by the long continued concurrent acquiescence of the city, the park commissioners and of the general public."

, In *People* v. *Hanker*, 197 Ill. 409, this court held leave to file an information in the nature of a *quo warranto* to oust respondents as trustees of a village was properly refused, where the village had exercised, without question, the powers and functions of a municipal corporation for a period of twenty years, because of the long delay of the relator and because of his acquiescence in the organization and acts of the village, of which he was an inhabitant, and it was said, quoting with approval from *People* v. *Schnepp*, 179 Ill. 305: "An unreasonable delay or an acquiescence on the part of the persons complaining, as well as consideration of the public interest or convenience, will justify a refusal to grant leave to file the information or to proceed to judgment, although no statute of limitations has intervened."

In *People* v. *Pike*, 197 Ill. 449, it was held that where a territory has exercised all the functions of a municipal government, with the acquiescence of the public, throughout a period of twenty years, strict proof of its legal organization will not be required in *quo warranto*.

Here, it appears that for more than twenty-eight years, in multitudinous ways, as specified above, the functions of a legally incorporated village have been exercised by the persons composing this so-called village. Public authorities, the people of the village, and those with whom it dealt, during all that period have acquiesced in its exercise of corporate powers. To permit the State now to oust it from the exercise of those powers on account of the irregularities which intervened more than a quarter of a century ago and which prevented a strictly legal organization of the village, would be to work a great wrong to the inhabitants of the village and to those who have acquired property rights on the basis that there was a proper organization of the municipality. To permit such a judgment would be against the public policy of our commonwealth. The acquiescence of the general public and the public authorities in the corporate acts of this village, and the *laches* of the State in instituting this proceeding, as these matters are averred by the second plea, constitute a meritorious defense to this action.

Counsel for defendant in error has transmitted to the clerk of this court, for presentation to us, two letters addressed to him signed by certain of the respondents, and a petition addressed to him signed by residents of the village of Sheridan, and a certificate of the clerk of LaSalle county showing certain proceedings had in the village of Sheridan subsequent to the entry of the judgment in the court below in this cause, and, based on these, prints with his brief what he calls "addenda and personal statement of the State's attorney." None of the documents in question are shown by the transcript of

record, and they are not transmitted by virtue of an order of the judge of the lower court, made in accordance with rule 12 of this court, which is the only method by which original documents can be presented for our inspection.   Submitting these documents was a violation of the rules of this court.   This is a court of review. Counsel must be content with the presentation of such facts as appear from the record.   No others will be considered here.  The letters, the petition and the certificate so transmitted will be stricken from the files.

The judgment of the circuit court will be reversed as to all the respondents and the cause will be remanded, with directions to the circuit court to sustain the demurrer as to the first plea and to overrule the demurrer as to the second plea.

*Reversed and remanded, with directions.*