(No. 13287.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error,
*vs.* THE CITY OF LEROY, Defendant in Error.

*Opinion filed June 16, 1920.*

1. QUO WARRANTO—*remedy by quo warranto ·is subject to ex-
ercise of judicial discretion.* The remedy by information in the
nature of *quo warranto* is not a matter of absolute right but is sub-
ject to the exercise of sound legal discretion, dependent upon the
facts in the particular case.

2. MUNICIPAL CORPORATIONS—*when the writ of quo warranto to
question authority of city over particular territory may be refused.*
Mere neglect by public officers will not bar an information in the
nature of *quo warranto* calling upon a municipality to show by what
authority it exercises its corporate power in a particular territory,
but if by long acquiescence in an attempted annexation such a con-
dition has arisen that great injury or injustice will result from the
allowance of the writ the court may refuse it.

WRIT OF ERROR to the Circuit Court of McLean county;
the Hon. SAIN WELTY, Judge, presiding.

MILES K. YOUNG, State's Attorney, and A. E. & R. C.
DEMANGE, for plaintiff in error.

LESLIE J. OWEN, and BARRY & MORRISSEY, for defend-
ant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error is prosecuted to reverse a judgment
of the circuit court of McLean county in favor of the de-
fendant to an information in the nature of *quo warranto.*
The information, which was filed on August 14, 1918,
charged that the city of LeRoy had been unlawfully ex-
ercising corporate powers for thirteen years last past over
a certain tract of land of about eight and one-half acres
which was not within the corporate limits of the city, by
assessing, levying and collecting taxes on said territory for
the support of the city government and special assessments

for local improvements constructed by the city, and had otherwise exercised corporate jurisdiction over said territory without warrant of law. The defendant filed two pleas. The plaintiff replied to the first and demurred to the second. The demurrer was overruled, and the plaintiff having elected to stand by it, final judgment was entered in favor of the defendant. The sole question, therefore, is the sufficiency of this plea.

The plea alleged that on May 31, 1904, Barley & Pfitzenmeyer made a written offer to the defendant, at a special meeting of the city council, that if it would construct water mains in certain streets and extensions they would furnish certain other water mains without expense to the city to form a complete circuit; that the council voted to accept the proposition provided that Barley & Pfitzenmeyer would incorporate certain land within the city; that Barley & Pfitzenmeyer, who were then the owners of the land described in the information, thereupon caused it to be surveyed and platted as Barley & Pfitzenmeyer's East Park addition to LeRoy, and on June 13, 1904, at a regular meeting of the city council, presented the plat, together with their certificate thereto signed and acknowledged, and the certificate of the surveyer, and it was moved and carried that the territory be and the same is hereby received into the corporate limits of the city of LeRoy; that thereupon the mayor and city clerk attached a certificate to said plat to the effect that said addition and plat had been approved by the city council, and the plat, with the accompanying certificates, was recorded in the recorder's office of the county; that the water pipes were laid as provided for; that Barley & Pfitzenmeyer conveyed portions of the premises from time to time, describing them in all their deeds as lots in Barley & Pfitzenmeyer's East Park addition to the city of LeRoy, and all of the present owners acquired title by such description; that on March 27, 1908, all of the owners of said premises brought suit to quiet title to the land, describing

the separate tracts in the same way, and thereafter a decree was entered quieting title by the same description; that the city, after June, 1904, annually levied taxes against said premises by number of the lot and block in Barley & Pfitzenmeyer's East Park addition to LeRoy, and the taxes were voluntarily paid by the respective owners without objection until 1915, when two of the owners objected to taxes of that year; that ever since June 13, 1904, the city has recognized and treated said premises as a part of the city, has lighted, worked and graded the streets and cut the weeds in them; that in 1914 it constructed a general system of sewers for the entire city, the cost of which was assessed against the real estate in the city, including the several lots in said addition, under the Local Improvement act, and the assessments were paid by the respective owners of the lots; that in 1915 the city constructed a lateral sewer running the entire length of Center street, through the addition, under the Local Improvement act, and its cost was assessed, under the Local Improvement act, by lot and block number in the addition, and that the assessments were paid by the respective owners of said lots; that in 1915 Center and Park streets, in said addition, were paved by special assessment under the Local Improvement act, and paving bonds were issued in accordance with the statute, payable out of the assessment against the property, a part of which are still outstanding; that since 1904 the inhabitants of said addition have voted at the city elections without question; that in 1913 an election was held in the city by which a bond issue of $8000 was authorized, and bonds to that amount were issued and sold and $4000 of them remain unpaid; that in 1918, prior to the commencement of this suit, an election was held in the city by which a bond issue of $15,000 was authorized, and bonds to that amount were issued and sold and remain unpaid; that the validity of the annexation of the said addition to the city was never questioned until 1915, about the time said pavement was

being laid, and that in 1916 an installment of the special assessment for such pavement against the lots of John Healea, Charles Jones, Prudence Rutledge and Elizabeth McKinney fell due and was reported delinquent, and on application for judgment therefor the parties objected that the addition was not a part of the city, which objection was overruled and an order of sale was entered, which, upon appeal to the Supreme Court, was affirmed; that the lots in the addition are now owned by a large number of persons, many of whom reside on the property in the addition, and none of them question or object to the city's exercising jurisdiction over the premises except John Healea, Charles Jones and Prudence Rutledge, and that by reason of the great *laches* in the commencement of this suit and the great injury and inconvenience that will result the People should be barred from the further prosecution of this suit.

The attempted annexation of the East Park addition to the city of LeRoy was void because the things required by the statute to effect that purpose were not done. The plea in question does not aver that annexation was effected by the acts done, but states facts which it is claimed show such acquiescence by the public, through its officers, in the exercise of jurisdiction by the city as should bar the prosecution of the suit. The remedy by information in the nature of *quo warranto* is not a matter of absolute right but is subject to the exercise of sound legal discretion, dependent upon the facts in the particular case. Mere neglect by public officers will not bar the People from calling upon a municipality to show by what authority it exercises its corporate power in particular territory, but if by long acquiescence such a condition has arisen that great injury or injustice will result from the allowance of the writ the court may refuse it.

In *Jameson* v. *People,* 16 Ill. 257, an information at the June term, 1855, of the Rock Island circuit court raised the question of the legal existence of the town of Oquawka

because the vote on the question of incorporation in April, 1851, was taken by ballot instead of *viva voce,* as required by the statute. The plea showed that from April, 1851, to the filing of the information,—more than four years,—the corporation was recognized as a public municipal corporation and exercised the franchises and powers conferred on such corporation by law, passed and enforced ordinances, levied and collected taxes, brought and defended suits, made contracts, incurred liabilities and provided for and regulated the police of the town, and that the legislature, by acts conferring power upon it, had twice recognized the existence of the town. The court in reversing a judgment against the defendant said: "Municipal corporations are created for the public good—are demanded by the wants of the community; and the law, after long continued use of corporate powers, and the public acquiescence, will indulge in presumptions in favor of their legal existence. * * * The law will incline to sustain rather than to defeat them. It would seem incompatible with good faith and against public policy, although irregularities may have intervened in the organization of the town, now to hold that it is not a body corporate, and we do not think the law requires us to do so."

In *Soule* v. *People,* 205 Ill. 618, an ouster of village officers was sought on the ground that the village was not legally organized though it had been exercising the franchises and powers of a municipal corporation for twenty-eight years. Concerning this situation the court said, on page 624: "Here it appears that for more than twenty-eight years, in multitudinous ways, as specified above, the functions of a legally incorporated village have been exercised by the persons composing this so-called village. Public authorities, the people of the village, and those with whom it dealt, during all that period have acquiesced in its exercise of corporate powers. To permit the State now to oust it from the exercise of those powers on account of

the irregularities which intervened more than a quarter of a century ago and which prevented a strictly legal organization of the village, would be to work a great wrong to the inhabitants of the village and to those who have acquired property rights on the basis that there was a proper organization of the municipality. To permit such a judgment would be against the public policy of our commonwealth. The acquiescence of the general public and the public authorities in the corporate acts of this village, and the *laches* of the State in instituting this proceeding, as these matters are averred by the second plea, constitute a meritorious defense to this action."

In the present case, ever since the ineffectual effort of the city and the land owners to annex the owners' land to the city by agreement, the city has exercised its authority over the added territory, the same as over other parts of the city. Year after year it has levied and collected taxes, made public improvements by special assessments, instituting proceedings in the county court and procuring judgments, bonds have been issued by the city of LeRoy upon the votes of the inhabitants of this addition as well as of the other inhabitants of the city, pavements have been constructed, water mains and sewers laid, property improved with reference to these public improvements, with water and sewer connections, the business and property of the community adjusted and its indebtedness created or funded, on the basis that the territory involved in this proceeding is a part of a legally organized municipal corporation, entitled to the privileges and subject to the liabilities of such relation. No voter or inhabitant or property owner of the city of LeRoy or of the added territory made any objection to this situation for more than ten years and no public official deemed it his duty to call in question the city's power. During these years the people, both within and without the original city, relying on the inclusion of the East Park addition within the corporation, have acted in

regard to municipal affairs and their private affairs as if the apparent condition were the true condition and were permanent. No benefit can result from cutting off from the city the territory in question after the many years of peaceful and satisfactory union, universally acquiesced in.

The circuit court rendered the right judgment in overruling the demurrer, and the judgment will be affirmed.

*Judgment affirmed.*