NOEL R. SCHALLAU, Plaintiff-Appellant, *v.* THE CITY OF NORTHLAKE *et al.*, Defendants-Appellees.—PARENT REAL ESTATE ORGANIZATION *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF NORTHLAKE, Defendant-Appellant.

First District (2nd Division)   Nos. 78-1336, 78-1467 cons.

Opinion filed December 18, 1979.—Supplemental opinion filed on denial of rehearing April 22, 1980.

Paul T. Kalinich, of Glen Ellyn, for appellant.

John E. Dvorak, Robert A. Novelle, and Stephen C. Debboli, all of Chicago, for appellee and appellant City of Northlake.

Howard E. Gilbert, Allan G. Levine, and Stuart P. Levine, all of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Noel H. Schallau, brought this action seeking a declaratory judgment that a certain ordinance of annexation and zoning passed by defendant City of Northlake (the City) is void and invalid. Plaintiff also requested an injunction, preventing improvement of the property, against

defendants Melrose Park National Bank, as trustee; Parent Real Estate Organization, the developer; and the developer's principal, Leon Parent (hereinafter the developer).

All defendants answered, and the cause proceeded to a bench trial in the circuit court of Cook County. At the close of plaintiff's case, defendants moved for judgment in their favor, which the court granted. Following the denial of his post-trial motion, plaintiff appealed. In its brief on appeal, the developer for the first time argued that *quo warranto* was the sole remedy for testing the validity of an annexation. Plaintiff then filed a motion in this court to amend his pleadings accordingly, which motion we have taken with the case.

In addition, one week before plaintiff filed his notice of appeal, the developer petitioned the circuit court for a writ of *mandamus* and for a rule to show cause against the city, for its failure to issue a building permit and to record the developer's plat of annexation. The court issued an order and a rule to that effect and, after a hearing, found various city officials in contempt and fined them. The city appealed to this court, which has stayed the effect of the contempt citation.

This controversy began on January 6, 1977, when the developer, Parent Real Estate Organization, petitioned the City of Northlake to annex a three-acre parcel of vacant real estate located on the south side of Rhodes Street in unincorporated Leyden Township. The developer simultaneously petitioned the city to rezone the property from R-1 single-family residence to R-3 multiple-family dwelling, so as to permit construction of a 56-unit apartment complex. Plaintiff owns a piece of property improved with a single-family residence and located at the northwest corner of Pearl and Rhodes Streets in Melrose Park, Leyden Township.

On May 7, 1977, after conducting a public hearing, the City's plan commission recommended that the property be annexed, but zoned as single-family rather than multiple-family dwelling property. At the request of the developer, the city sent the matter back to the plan commission for additional testimony. More public hearings were held, and numerous neighboring property owners submitted a written protest against the proposed rezoning. The plan commission once again rejected the request for annexation of the property with R-3 zoning.

On December 21, 1977, the Northlake city council met and voted on a motion to override the plan commission objections. The motion carried by a 7-1 vote, as did motions to annex the property as per the pre-annexation agreement and to rezone the property from R-1 to R-3. On January 10, 1978, at the next regular meeting of the city council, a motion was made to "spread in the minutes of December 21, 1977" the motion or ordinance annexing and rezoning the property, as it had not been reduced

to writing at the time of the earlier meeting. This motion passed, but by a vote of 5-2, with one abstaining. The minutes of these meetings were attached to plaintiff's complaint as exhibits.

Plaintiff's complaint contended that the annexation and rezoning ordinance was invalid for the following reasons: (1) no written ordinance was in existence on December 21, 1977, the purported date of the ordinance's passage; (2) the city council permitted the developer to introduce additional testimony at its meeting of December 21, 1977, in violation of section 708(6) of the City's Code, which provides in part: "The City Council, upon report of the Plan Commission, and without further public hearing, may make, grant or deny any proposed amendment * * * or may refer it back to the Plan Commission * * *"; (3) the vote on January 10, 1978, approving by a 5-2-1 margin the ordinance purportedly passed on December 21, 1977, was insufficient to override the plan commission's recommendation under section 708(5) of the city code, which requires a favorable vote of two-thirds of all the city council; and (4) the same vote was also insufficient to override the formal written protests of the adjoining landowners under section 11—13—14 of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—14), which requires a two-thirds vote of all the aldermen of a municipality when the requisite number of nearby landowners have protested. Plaintiff also pointed out that it was the developer who initially petitioned for annexation, when the record owner of the property was the Melrose Park National Bank as trustee under a land trust. Plaintiff additionally contended that the rezoning was unreasonable, arbitrary, and without any substantial relation to the public health, safety, or general welfare, and was invalid, void, and unconstitutional because, among other allegations, the property is in a flood plain, the surrounding area is improved solely with single-family residences, and a more intensive residential use would increase the hazards of flooding. Chief among the types of relief sought were a declaratory judgment that the annexation and rezoning ordinance was invalid and an injunction preventing improvement of the property.

All defendants answered. The City admitted the basic chronology of events but contended that the annexation ordinance was really passed on December 21, 1977, and the vote taken on January 10, 1978, was only to spread the written ordinance of record and not to approve or disapprove of it. The developer answered that its ownership interest was known and fully disclosed to all parties; that a valid ordinance of annexation and rezoning was enacted; that the minutes of the city council meetings spoke for themselves and their contents were admitted, but that the ordinance was passed by a 7-1, and therefore sufficient, majority. The developer also pleaded as an affirmative defense, among other things, that a duly enacted ordinance of annexation and rezoning from R-1 to R-3 had been passed

by the city council, had never been vetoed, and remained valid. The trial court ruled this matter did not constitute an affirmative defense and inserted it in the main body of the answer. Both the city and the developer denied all plaintiff's allegations relating to the alleged invalidity of the rezoning.

At the trial of the cause, it was revealed that certain letters presented to the city council at its meeting on December 21, 1977, had never been presented to the plan commission. It was also stipulated that the Melrose Park National Bank, as trustee, was the legal titleholder of the subject property. The city's mayor testified that no annexation ordinance was presented to the city council and no rezoning ordinance was ever presented, though there had been motions. The mayor took no action on the city council's vote, but an objection to his stating the reason for his inaction, on the ground that it covered a matter of law, was sustained.[1] Defendants' objection to testimony by the mayor as to the advisability of the proposed project was also sustained.

As to the propriety of the rezoning, plaintiff offered testimony by James Jackson, a metropolitan sanitary district engineer, establishing that the entire subject property was located within a flood plain. William Lawrence, the author of the city's comprehensive plan and a city planning and zoning consultant to whose expertise the parties stipulated, also testified that the property is in a flood plain and in an area of single-family homes. Lawrence stated that the City's comprehensive plan included the land within 1½ miles of the City's borders and therefore covered the subject property. In the plan the property was designated as open space, and in the witness' opinion the highest and best use of the land would be as open space to provide compensatory storage for storm water. When asked what factors he considered in coming to that opinion, the witness emphasized that most of the area was developed with single-family residences and multiple-family residences would be "incompatible * * * and would have an adverse effect upon the flood conditions." Plaintiff also offered his own testimony as to flooding on both the developer's and his own property. He stated that both properties had always been subject to flooding but flooding in adjacent areas had increased since fill had been dumped on the subject property.

Finally, the ordinance annexing and rezoning the land, bearing the December 21, 1977, date, was introduced by stipulation and plaintiff

---

[1] Although plaintiff made no formal offer of proof, for purposes of elucidation we note that plaintiff's complaint alleged that the mayor did not veto the ordinance due to the confusion over the date the ordinance was actually passed, December 21, 1977, or January 10, 1978, and the fact that the mayor is only empowered to veto an ordinance at the next meeting after its passage. When the next city council meeting took place, on January 24, 1978, the mayor was allegedly advised that it was too late to veto the ordinance and therefore, plaintiff alleged, the mayor did not do so.

rested his case. The developer then moved for judgment in its favor. The motion contended that plaintiff had failed to submit sufficient evidence to sustain the allegations of his complaint or to show any particular injury or special damage, but the bulk of the developer's written motion addressed itself to plaintiff's failure to file a reply denying the allegations defendants made in their answer to the effect that a valid ordinance was duly enacted and passed by a 7-1 vote, a sufficient majority. However, during argument on the motion, the developer's attorney made more specific his contention that plaintiff had failed to prove any special damage, arguing that the area was already subject to flooding and plaintiff had failed to show that the proposed development would cause any additional flooding problems in the area.

Plaintiff requested leave to file a reply, but the court denied leave and granted the developer's motion for judgment, in favor of all defendants. Plaintiff filed a post-trial motion, again seeking leave to file a reply, arguing that he had presented a prima facie case as to the invalidity of both the annexation and rezoning, and asking the court to reconsider its rulings restricting the mayor's testimony. Plaintiff also sought leave to amend his complaint to conform it to the proof of several other purported violations of the city code by defendants, which included failing to notify all adjoining landowners of the proposed rezoning and permitting an apartment building to be built in a flood plain.

The trial court denied the post-trial motion in toto, and plaintiff appealed. In their appellees' brief, defendants for the first time advanced the argument that *quo warranto* was the sole remedy for testing the validity of an annexation. Defendants argued that the trial court's judgment in their favor must therefore be affirmed as a matter of law; their brief accordingly did not address the merits of most of plaintiff's objections to the ordinance of annexation and rezoning. In response, plaintiff has filed a motion pursuant to Supreme Court Rule 362 (Ill. Rev. Stat. 1977, ch. 110A, par. 362), in which plaintiff seeks to amend his pleadings to reflect a request for *quo warranto* relief, and which we have taken with the case.

■■■ As defendants have pointed out, *quo warranto* is the only proper remedy for questioning the validity of an annexation that has been accomplished. (*E.g.*, *Edgewood Park #2 Homeowners Association v. Countryside Sanitary District* (1969), 42 Ill. 2d 241, 246 N.E.2d 294, *aff'd* (1968), 96 Ill. App. 2d 161, 237 N.E.2d 838; *Malecki v. First State Bank* (1973), 13 Ill. App. 3d 979, 301 N.E.2d 623; *Village of Bridgeview v. City of Hickory Hills* (1971), 1 Ill. App. 3d 931, 274 N.E.2d 925, *cert. denied* (1972), 407 U.S. 921, 32 L. Ed. 2d 806, 92 S. Ct. 2460. An action for a declaratory judgment and for injunctive relief is accordingly not an appropriate remedy. (*Edgewood Park*; *Malecki*.) Moreover, as the

*Edgewood Park* and *Malecki* cases both demonstrate, a party's failure to pursue the exclusive remedy of *quo warranto* can be raised for the first time on appeal, although in both cases it was the appellate court, rather than the defendant, which raised the issue on review.

■■ The procedure for initiating an action in *quo warranto* is outlined in the *quo warranto* act (Ill. Rev. Stat. 1977, ch. 112, par. 9 *et seq.*). Under section 2 of the act, an action may be brought by a private individual only if he has first sought action by the Attorney General and State's Attorney and they have refused to act; and secondly, if he has petitioned the court for, and has been granted, leave to bring the action (Ill. Rev. Stat. 1977, ch. 112, par. 10; see, *e.g., People ex rel. Durst v. Village of Germantown Hills* (1977), 51 Ill. App. 3d 969, 367 N.E.2d 426). This petition must allege a personal, private interest on the part of the petitioner in the matter, and that special interest must be pleaded specifically. (*Durst; People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, 356 N.E.2d 806.) Whether leave to institute a complaint in *quo warranto* should be granted lies within the sound discretion of the trial court. *E.g., Hanrahan.*

■ As in the *Edgewood Park* case, the complaint herein cannot be construed as having been brought under the *quo warranto* act, since it does not allege a demand upon the specified State officials nor does it contain a specific allegation of a personal interest. (See *Edgewood Park*, 42 Ill. 2d 241, 245.) It is also apparent that no amount of amending on the part of this court can supply those deficiencies. We therefore can not accede to plaintiff's request that we do so, and plaintiff's motion in this court to amend his pleadings must be denied. However, neither do we accept defendants' position that our only course is to affirm the trial court's decision as a matter of law and put an end to the matter. The ultimate outcome of the *Edgewood Park* litigation, an intervening legislative development, and the procedural history of the case at bar raise an issue whether the cause should be remanded to give plaintiff the opportunity to pursue the proper remedy of *quo warranto.*

In *Edgewood Park*, the cause came to the appellate court upon the trial court's denial of summary judgment for the plaintiffs and its dismissal of the cause on their merits. The appellate court (96 Ill. App. 2d 161, 237 N.E.2d 838) and supreme court (42 Ill. 2d 241, 246 N.E.2d 294) affirmed, not on the merits but on the ground that plaintiff had failed to proceed in *quo warranto.* In affirming, the supreme court expressly reserved its opinion on whether the plaintiffs could file a proper complaint under the *quo warranto* act. (42 Ill. 2d 241, 245.) Thereafter, some of the same plaintiffs did file a petition for leave to file a complaint in *quo warranto.* The trial court both denied the petition and ruled that the challenged annexations were valid. On appeal, this court reversed (*People ex rel. Marre v. Countryside Sanitary District* (1972), 5 Ill. App. 3d 747, 284

N.E.2d 308), finding that the petition should have been granted and holding the annexations unlawful on the merits, in order to conclude the protracted litigation. All this was subsequently noted by the court in *Malecki v. First State Bank* (1973), 13 Ill. App. 3d 979, 301 N.E.2d 623, which similarly affirmed a trial court's dismissal of a complaint, but once again for the reason that the plaintiffs therein had been pursuing the wrong remedy.

Apparently in an attempt to shorten or straighten the circuitous path to relief followed in the *Edgewood Park/Marre* cases, effective October 1, 1973, the legislature added section 9 to the *quo warranto* act (Ill. Rev. Stat. 1977, ch. 112, par. 17, added by Pub. Act 78-391, §1).

That section provides:

> "Where relief is sought under this Act and the Court determines, on motion directed to the pleadings, or on motion for summary judgment or upon trial, that the plaintiff has pleaded or established facts which entitle him to relief but that he has sought the wrong remedy, the Court shall permit the pleadings to be amended, on just and reasonable terms, and the Court shall grant the relief to which plaintiff is entitled on the amended pleadings or upon the evidence. In considering whether a proposed amendment is just and reasonable, the Court shall consider the right of the defendant to assert additional defenses, to demand a trial by jury, to plead a counter-claim or third party complaint, and to order the plaintiff to take additional steps which were not required under the pleadings as previously filed."

This section, which has not yet, to our knowledge, been construed by any reviewing court, contains several elements worth noting in the context of the case at bar. First, it is obviously intended to benefit those who, like plaintiff, are really seeking *quo warranto* relief but have sought the wrong remedy. However, the section is obviously also directed toward the trial court in the first instance, and therefore does not literally meet the situation presented here, where the fact that plaintiff was pursuing the wrong remedy was never brought out in the court below. For the same reason, we cannot grant plaintiff's request, in conjunction with his motion to amend his pleadings, that this court take action under the section. But the fact that defendants did not raise the *quo warranto* issue in the court below, thereby preventing plaintiff from falling literally within the terms of section 9, cannot justly put them in a better position than if they had raised the issue.

■■■ Nevertheless, the obstacle to this course that remains is the express intent in section 9 that the section not operate unless the trial court has "determine[d] * * * that the plaintiff has pleaded or established facts

which entitle him to relief * * *." In the case at bar, by entering judgment at the close of plaintiff's case, we believe the court determined just the opposite. We note that one basis of defendants' motion for judgment was plaintiff's failure to reply to the allegations in defendants' answer that a valid ordinance had been enacted. Yet, if plaintiff had established to the court's satisfaction his standing to bring an action in *quo warranto*, the burden would have been on the defendant city[2] to prove that all the elements of its annexation were proper as being in accord with the statute. (*People ex rel. City of Des Plaines v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 807, 813, 331 N.E.2d 373.) Once in the context of *quo warranto*, the answer made by the city and the developer, stating simply that a valid ordinance had been passed, would have been insufficient either to require a reply by plaintiff or to justify the city's actions. See *People ex rel. Karns v. Village of Caseyville* (1968), 99 Ill. App. 2d 60, 241 N.E.2d 23.

■ However, this argument ignores the fact that the developer's motion for judgment also relied on plaintiff's failure to prove that he had suffered or would suffer any special injury or damage as a result of the ordinance. Proof of such a special interest is a prerequisite not only to the maintenance of an action in *quo warranto* to challenge an annexation, but also to the bringing of an action to contest the validity of a zoning ordinance governing the use to which another's property may be put. (See *Whittingham v. Village of Woodridge* (1969), 111 Ill. App. 2d 147, 249 N.E.2d 332.) The latter is precisely the type of action plaintiff brought, and thus plaintiff had both the opportunity and the obligation to prove the special injury required to challenge either the annexation or rezoning.

■ We believe that the trial court's dismissal of plaintiff's action must be affirmed on the basis of plaintiff's failure to carry this burden. The only proof of special damage was the vague, confused, and conclusory testimony that the subject property was in a flood plain and in an area improved by single-family homes, and a denser residential use would be "incompatible * * * and would have an adverse effect upon the flood conditions." Plaintiff himself testified that both his own and the developer's property were already subject to flooding. As the developer pointed out in amplification of its motion for judgment, beyond the bare statements of plaintiff's expert, no facts whatsoever were presented to show that the proposed development would cause more flooding than already existed or than would accompany improvement of the property

---

[2] This would apply to the developer, too, if, as is likely, the developer chose to intervene as a defendant. See, *e.g., People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, 830, 356 N.E.2d 806 (not questioning intervention as a defendant by a bank acting as trustee for a similarly situated developer).

with single-family residences. It is apparent, then, that remandment of the cause to give plaintiff an opportunity to pursue a remedy in *quo warranto* would serve no useful purpose, since plaintiff has already demonstrated his inability at trial to substantiate the special injury pleaded in his complaint. Because plaintiff has not "established facts which entitle him to relief" (Ill. Rev. Stat. 1977, ch. 112, par. 17), the trial court's judgment in defendants' favor is affirmed.

The city's cross-appeal remains to be considered, unfortunately without the benefit of a written adversary presentation of the issues, due to the developer's failure to favor us with the response permitted by Supreme Court Rule 343(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 343(b)). One week before plaintiff filed his notice of appeal,[3] the developer filed a petition for a writ of *mandamus* commanding the city to issue a building permit and record the ordinance of annexation. The developer simultaneously (and prematurely) requested a rule to show cause why the city should not be held in contempt for not doing so. The city answered that the developer had failed to comply with city ordinances requiring connection with the city water and sewage systems and presentation of permits from the Metropolitan Sanitary District and the Department of Transportation. At a hearing, the city presented uncontroverted testimony to this effect, as well as testimony that the developer's plans failed to meet city building code requirements and that the ordinance of annexation sought to be recorded was at variance with the plat of annexation.

After several attempts to help the parties resolve their differences, the court ordered the parties to file new petitions for relief. The developer's petition and supporting affidavit merely stated that the developer met all the requirements for issuance of a building permit and that the City was unreasonably refusing to record a valid ordinance of annexation. The only specific factual matter addressed was the City's insistence that the developer connect with the City's water system, the developer claiming that the City's planning commission and building department had actually required the developer to obtain water from another source.

On this state of the record, the court held in favor of the developer, finding that the developer had complied with all conditions precedent to issuance of a building permit and recordation of the annexation ordinance, and ordering the City to do so. Shortly thereafter, the developer petitioned for a rule to show cause. The City responded that an

---

[3] The City erroneously states in its brief that plaintiff's notice of appeal and the developer's petition were filed the same day, when it was the City's response to the petition that was filed concurrently with the notice of appeal. The City's argument that the filing of plaintiff's notice of appeal divested the trial court of jurisdiction to hear the *mandamus* petition is inapposite.

application for leave to file a complaint in *quo warranto* was pending in another division of the circuit court, and therefore requested that the court's order be stayed. The court nevertheless issued a rule to show cause. At the hearing thereon, the City once again presented uncontroverted testimony that the developer had not complied with all the city building code and ordinance requirements, but the court found the City and its officials in contempt and levied an escalating series of fines against them, conditioned on noncompliance with the *mandamus*. The contempt order has been stayed by this court pending the City's appeal.

■ A writ of *mandamus* is an extraordinary remedy, and the one seeking the writ must show a clear right to it. (*E.g., People ex rel. Council 19, American Federation of State, County, and Municipal Employees v. Egan* (1977), 52 Ill. App. 3d 1042, 368 N.E.2d 481.) In this context, that means that the burden was on the developer to establish that it had a clear right to a building permit and that it had complied with all applicable ordinances. (See *Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 374 N.E.2d 932.) In the instant case, there was uncontradicted evidence that the developer had failed to comply completely with applicable ordinances and therefore it was error to award a writ of *mandamus*. (See *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 790, 331 N.E.2d 380.) The order granting the relief sought is accordingly reversed.

■■ Although the court's order to issue a building permit was erroneous, an order issued by a court with jurisdiction of the subject matter and the parties must be obeyed until it is set aside. (*E.g., Faris v. Faris* (1966), 35 Ill. 2d 305, 309, 220 N.E.2d 210.) Until that time, disobedience of the order, however erroneous the order may be, is punishable by contempt. (*E.g., People ex rel. Watson v. Spinka* (1978), 58 Ill. App. 3d 729, 374 N.E.2d 787.) Nevertheless, it does not follow that the contempt order in the case at bar must be affirmed. The contempt found in the instant case may be characterized as civil contempt, in that it consisted of failing to obey an order for the benefit of an opposing litigant (*Welding Industrial Supply Co. v. Northtown Industries, Inc.* (1978), 58 Ill. App. 3d 625, 629, 374 N.E.2d 1002), and because the series of escalating fines imposed were designed to compel or coerce compliance with that order (*People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 504-05, 387 N.E.2d 856). As the court in *Police Hall of Fame* observed, when the underlying order must be reversed in such a case, the coercive purpose of the contempt order can no longer be served, because it is no longer possible for the parties found in contempt to obey the original order. In that event, a civil contempt finding falls with the reversal of the underlying order. See *People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 504-05, 387 N.E.2d 856.

Accordingly, the judgment of the circuit court in favor of defendants and against plaintiff in cause no. 78-1336 is affirmed. The orders granting *mandamus* relief and holding the city in contempt in cause no. 78-1467, the cross-appeal, are reversed.

Affirmed in part; reversed in part.

DOWNING and PERLIN, JJ., concur.


SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
Mr. JUSTICE STAMOS delivered the opinion of the court:
Parent Real Estate Corporation (the developer) has filed a petition for rehearing, directing the court to several factual matters claimed to have been overlooked in that portion of our prior opinion which reversed the trial court's award of mandamus relief against the city. While we find it unnecessary to grant the petition for rehearing, and our reversal stands, in the interests of justice to the parties we modify our disposition and remand for a hearing, as detailed below. See *Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 130, 390 N.E.2d 835.

This case has been rife with confusion from beginning to end. It began, in the trial court, when plaintiff Schallau sought the wrong remedy, and has continued into this court, where the party seeking a rehearing is in the awkward posture of having failed to file a brief on the issues on which rehearing is sought. We begin with a discussion of why the latter fact does not preclude consideration of the merits of the petition. This appeal is a consolidation of two cases. Cause No. 78-1336 is plaintiff Schallau's appeal from judgment for the developer and the city in plaintiff's challenge to the ordinance of annexation and rezoning at the bottom of this controversy. Cause No. 78-1467 is the city's appeal from the trial court's grant of a petition for mandamus brought by the developer against the city, after judgment was entered in the original action but prior to plaintiff's appeal therefrom. After plaintiff filed his appellant's brief in cause No. 78-1336, the developer filed a blue appellee's brief directed toward only the issues raised on that appeal. Next, the city filed its brief, also a blue brief, in which the city joined in the developer's brief in cause No. 78-1336, and then went on to argue the points raised in the city's appeal in cause No. 78-1467. No brief in response was filed by the developer until the instant petition for rehearing.

The city contends the developer waived its right to argue any and all points that should have been raised in the developer's never-filed

responsive brief, citing Supreme Court Rule 341(e)(7). (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).) The rule is not a restriction on appellate jurisdiction, and may be overridden where necessary to reach a just result. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) We fail to see how the city would be unduly prejudiced when the issues contended to be waived were raised by the developer in the court below and by the city in its brief on appeal. The developer should have filed a responsive brief, or at least sought clarification of its ability to do so. But the possibility of confusion surrounding the filing of briefs on this appeal and the need for a just result support our consideration of the developer's petition for rehearing.

An amplified chronology of the documents and events pertaining to the mandamus petition demonstrates the need for modification of our disposition and remandment to the trial court. On April 17, 1978, the developer filed its petition for a writ of mandamus compelling the city to issue a building permit and to record the ordinance of annexation upheld by the trial court. On April 24, the city answered, denying the developer had fulfilled all prerequisites to issuance of a building permit and affirmatively stating the developer had failed to comply with city ordinances requiring connection with the city water and sewer system and presentation of permits from the Metropolitan Sanitary District (MSD) and the Illinois Department of Transportation (DOT). The developer's reply, filed that same day, alleged that at the time of annexation and prior thereto, the city requested and advised the developer to obtain water and sewer service from adjacent Leyden Township, on which the developer relied, and the city never mentioned any difficulty with the developer's application for a building permit. In a discussion between the parties' attorneys and the court ostensibly also held that day. April 24, counsel for the developer stated that the developer had all necessary permits, including the MSD and DOT permits (which he produced in court), and therefore the only real issue was whether the city was estopped from requiring connection with the city water and sewer system. (An issue was also raised concerning a variance between the ordinance and the plat of annexation.) But in a hearing on April 25 and 26, as stated in our original opinion, the uncontroverted testimony was that the necessary MSD and DOT permits had not yet been issued. The apparent dilemma was resolved when this court discovered a juxtaposition of transcripts in the record. This court's search revealed that the "April 24" discussion actually took place on July 24, while a transcript in the record dated July 24 is actually from April. Thus, the situation in July was that these necessary permits had been obtained after all.

As for the water and sewer issue, at the hearing on April 25 and 26, the city's mayor testified that to his knowledge, no city employee ever told the developer that he was not required to procure water and sewer service from the city. There was testimony by the city's mayor and water and sewer commissioner that the city had only very recently become aware of its own ordinance, which had not previously been enforced; that other residents very close to the proposed development obtained water from Leyden Township; and that the city would in fact buy the water it would sell to the development from Leyden Township. It also became clear that the developer would be required to pay for the extension of city water and sewer pipes five or six blocks to the development, which would take 2 or 3 months and an unknown amount of money. The developer offered the testimony of a Leyden Township engineer who was also the engineer on the proposed development. He drafted the water and sewer plans for the project which were submitted to the city, and these plans showed that Leyden Township would provide water and sewer service. But no testimony of any affirmative act by the city, on which to base estoppel, was offered at the hearing. Evidence was also introduced that the city fire, plumbing, and electrical inspectors had not yet reviewed the developer's plans, additional prerequisites to the issuance of a building permit.

The trial court then directed the city to compose a letter enumerating all tasks to be completed before a building permit could issue. In a letter dated May 11, the city listed the following: payment of an annexation fee; payment of inspection fees for various inspections which had not yet been completed, after their completion; tender of the MSD and DOT permits, as well as an EPA permit; and hookup to the city water and sewer system. In the "April 24" status hearing that actually took place on July 24, counsel for the developer produced all permits and stated all fees had been paid. The city's attorney agreed the only obstacle to the issuance of a building permit was the water and sewer issue, though the issue regarding the variance between the ordinance and the plat of annexation also remained. Lamenting the lack of progress, the court requested that either side prepare petitions upon which the court could rule.

The developer did submit a second petition, as set out in our original opinion. Attached was an affidavit by the developer averring·that the city, through its planning commission and building department, specifically required as a condition of annexation and rezoning that the developer procure water and sewer service from Leyden Township, because service from the city was not available. The trial court granted the developer's petition for mandamus the next day.

Procedurally, this aspect of the case at bar is strikingly similar to the

situation in *In re Estate of Hartman* (1978), 65 Ill. App. 3d 380, 381 N.E.2d 1221. In that case too, the trial court initially held a hearing, at which one party failed to adduce evidence necessary to support her position. Later, while the matter was under advisement, that party presented affidavits remedying the deficiency in her proof, and the court ruled in her favor. Finding that the trial court based its order, at least in part, on the affidavits, which should not have been considered by the court after holding a hearing, the appellate court reversed. But because the procedure undertaken in the trial court may have generated confusion as to whether or not affidavits would be permitted as evidence, the court held it would be in the best interests of all parties to remand with specific directions for the taking of evidence. 65 Ill. App. 3d 380, 285-86.

Similarly, although our reversal stands, the confusion surrounding the trial procedure and exacerbated by the erroneous collation of the record on appeal compels us to remand this cause for a hearing, in the interest of justice and in the best interests of all the parties. Evidence should be taken on the issue of whether the city committed any affirmative act which would estop it from enforcing its ordinance requiring connection with the city water and sewer system. Because, although the requisite fees may have been paid, the record does not clearly establish that the developer's plans are in compliance with the city's building codes, evidence should also be received on that issue. For this purpose, the trial court may enter any order reasonably necessary to expedite completion of any inspection or review of the developer's plans. In addition, although our reversal of the trial court's contempt order remains intact, this is without prejudice to the power of the trial court to enter a new finding of contempt if circumstances in the future should require.

Finally, at the developer's request, we consider the city's refusal to record the plat of annexation. This refusal was based on the fact that the petition and ordinance of annexation failed to include a highway adjacent to the territory annexed, while the plat did include the highway. The legislative history of section 7—1—1 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1), governing this area, makes clear that adjacent highways shall be considered to be annexed even though not included in the legal description set forth in the petition for annexation and, by implication, the ordinance based on the petition. (See Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1, as amended by Pub. Act 79-996, 51, eff. Oct. 1, 1975; Ill. Rev. Stat. 1977, ch. 24, par. 7—1—1, as amended by Pub. Act. 80—310, §1, eff. October 1, 1977 (essentially making Pub. Act. 79-996 retroactive); see also, *e.g.*, *In re Annexation to Village of Green Oaks* (1978), 58 Ill. App. 3d 842, 844, 374 N.E.2d 854.) Accordingly, the trial court is directed to order the city to sign and record the plat of annexation including the

highway adjacent to the territory annexed. The cause is remanded for the purposes herein expressed. See *In re Estate of Hartman* (1978), 65 Ill. App. 3d 380, 386, 381 N.E.2d 1221.

Rehearing denied; disposition modified; cause remanded with directions.

PERLIN, P. J., and DOWNING, J., concur.