THE PEOPLE *ex rel.* NORTHFIELD PARK DISTRICT, Plaintiff-Appellant and Cross-Appellee, v. GLENVIEW PARK DISTRICT, Defendant-Appellee and Cross-Appellant.—THE PEOPLE *ex rel.* NORTHFIELD PARK DISTRICT, Plaintiff-Appellant, v. NORTHBROOK PARK DISTRICT, Defendant-Appellee.

First District (4th Division)   No. 1—90—0195

Opinion filed November 7, 1991.

Friedman & Holtz, P.C., of Chicago (Gregory A. Friedman, Charlene L. Holtz, Evdoxia Beroukas, and Daniel D. Davis, of counsel), for appellant Northfield Park District.

Stewart H. Diamond, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (Samuel W. Witwer, Jr., of counsel), for appellee Glenview Park District.

Stewart H. Diamond, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, and Barry L. Moss, of Moss & Bloomberg, Ltd., of Bolingbrook (Samuel W. Witwer, Jr., and Thomas G. Hoffman, of counsel), for appellee Northbrook Park District.

Schiff, Hardin & Waite, of Chicago (Frederic R. Klein and Heidi Dalenberg, of counsel), for *amicus curiae* Society of the Divine Word.

McBride, Baker & Coles, of Chicago (George C. Hook, P.C., and Paul D. Frenz, of counsel), for *amicus curiae* North Valley Lo Condominium Association.

Gardner, Carton & Douglas, of Chicago (John E. Reinert and Mary Beth Cyze, of counsel), for *amicus curiae* Marathon U.S. Realties, Inc.

Edgar Vanneman, Jr., of Evanston, for *amicus curiae* Northwestern Illinois Planning Commission.

Burke, Bosselman & Weaver, of Chicago (Steven M. Elrod, of counsel), for *amici curiae* Village of Northbrook, Northfield Township High School District No. 225, Elementary School District No. 28, and Elementary School District No. 30.

Randall, Gayle & Patt, of Glenview (Jeffrey M. Randall, of counsel), for *amici curiae* Village of Glenview and Community Consolidated School District No. 34.

JUSTICE LINN delivered the opinion of the court:

Northfield Park· District sought to file a complaint in *quo warranto* challenging the right of Glenview Park District and Northbrook Park District to exercise jurisdiction over approximately 900 acres of territory that, according to Northfield, was annexed to the other park districts in violation of State law. Thirteen years before the suit was filed, the land in question had been disconnected from the Northfield Park District and subsequently annexed to the park districts of Glenview and Northbrook, pursuant to an intergovernmental land use and boundary agreement. Northfield Park District was a party to the agreement and had participated in its negotiation.

The trial court reviewed the materials presented in support of and in opposition to the petition for leave to file the complaint and held that Northfield's complaint was barred by the doctrines of estoppel, *laches*, and the statute of limitations.

On appeal, Northfield Park District contends as follows: (1) statutes of limitation, *laches*, and estoppel do not apply to a park district enforcing public rights; (2) where, as here, the disconnection of territory from one local government unit and annexation to others was not done in conformance with the relevant statute, the local governments' acts are without jurisdiction and the intergovernmental agreement is void *ab initio*; (3) the trial court's application of the doctrines of

38

estoppel and *laches* was against the manifest weight of the evidence; and (4) the trial court erred in permitting the filing of *amicus curiae* briefs because there is no statutory authority for filing them in the trial court and they are irrelevant and prejudicial to Northfield Park District.

We affirm.

BACKGROUND

On July 1, 1975, thirteen north suburban governmental units and another entity, the Northeastern Illinois Planning Commission (NIPC) entered into an intergovernmental land use and boundary agreement, relying on authority found in article VII, section 10, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §10) and in the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1975, ch. 127, par. 741 *et seq.*). Section 10 of article VII of the Illinois Constitution permits local governmental units, whether or not they are home-rule units, to contract among themselves to "obtain or share services and to exercise, combine, or transfer any power or function, in any manner not prohibited by law or by ordinance." Ill. Const. 1970, art. VII, §10.

Since 1972, the group had worked to form a joint planning commission, which culminated in the arrangements collectively called the "Techny Agreement." "Techny" is the name of the territory in Cook County that was the subject of the disconnection and annexations in the pending case. Techny is a parcel of land, approximately 1,200 acres, that is located at or near the intersection of Willow and Waukegan Roads in Cook County. At the time, Techny was primarily owned by religious orders.

The participants in the planning that resulted in the Techny Agreement were the home rule municipalities of Glenview and Northbrook; the Village of Northfield; the park districts of Glenview, Northbrook, and Northfield; four elementary school districts and two high schools, and the township of Northfield.[1]

In this appeal, Northfield Park District challenges the Techny land use and boundary agreement to which it was a party, primarily on the grounds that the agreement violated section 3—6 of the Park District Code, which requires that "[a] written petition, signed by the majority of the owners of record of land and the owners of record of more than one-half of the area of land in the territory described in the peti-

[1]References to Northfield, Glenview, and Northbrook in this opinion will mean the park districts of those communities, unless otherwise specified.

tion, shall be filed with the secretary of the governing board of the park district, requesting that the specified territory be disconnected from the park district." Ill. Rev. Stat. 1989, ch. 105, par. 3—6.

Pursuant to the Techny Agreement, the Northfield board passed two ordinances in March 1976. One disconnected 541 acres (subsequently annexed by Northbrook) and the other disconnected 282 acres of property (subsequently annexed by Glenview).

The pending controversy arose in 1988, when the current board of Northfield reviewed the 1976 disconnection ordinances and determined, with assistance of counsel, that the disconnection ordinances were invalid because no landowner petitions had been filed, as required by the Park District Code. Following a fruitless meeting between representatives of Northfield, Glenview, and Northbrook, Northfield requested the Attorney General of Illinois and the State's Attorney to file a complaint in *quo warranto* against Glenview and Northbrook. Both offices declined, however, stating that the issues involved a purely local dispute and that the parties would be adequately represented by their own counsel. In May 1989, Northfield filed its petitions for leave to file *quo warranto* complaints against Glenview and Northbrook. The two cases were consolidated.

Northfield alleged that the 1976 disconnection ordinances were invalid because they did not comply with the "jurisdictional" petition requirement of the Park District Code. This, Northfield claims, invalidates the ordinances. Northfield also challenged the authority of the park districts to enter into the Techny Agreement in the first place. Northfield claimed that because it had not lawfully disconnected its territory, that territory remained within Northfield's boundaries and could not have been lawfully annexed.

Both Glenview and Northbrook filed responses, including affidavits, to establish their reliance on the Techny Agreement and Northfield's disconnection of the acreage in question. The Techny territory has been administered as part of the Glenview and Northbrook park districts since 1976, and this has been reflected on public documents such as maps and plans. The land has been included in their service areas and thus as part of the tax base of the communities, significant in budgeting and planning for future land use. While the Northbrook portion of the land has largely remained tax exempt to date, because the residents are priests of the Society of the Divine Word ("Techny Fathers"), the Glenview portion has included improvements constituting a tax base in excess of $6 million of assessed valuation.

Northfield challenged the affidavits filed on behalf of Northbrook and Glenview, asserting that the statements therein were conclusory and contradicted by deposition testimony of other individuals.

At the hearing, the trial court considered the parties' legal memoranda and supporting factual material. The trial court also provisionally received all *amicus* briefs filed, over Northfield's objection. The trial court rejected Northbrook's and Glenview's challenge to Northfield's standing, or requisite private interest, to file a suit in *quo warranto*. The court held that Northfield did have standing, finding the private and public interests asserted were intertwined. The court went on to hold, however, that the action was barred by estoppel, *laches*, and the statute of limitations.

OPINION

■■ Granting leave to file a complaint in *quo warranto* is a matter left to the sound discretion of the trial court, and the trial court may inquire into all surrounding circumstances, including but not limited to, the motives of the petitioner and the possible effects on the public interest. (*People ex rel. Van Cleave v. Village of Seneca* (1988), 165 Ill. App. 3d 410, 519 N.E.2d 63; see also *Schallau v. City of Northlake* (1979), 82 Ill. App. 3d 456, 403 N.E.2d 266.) Dismissal of the application to file a complaint in *quo warranto* is appropriate where issuing a writ of *quo warranto* is not in the public interest or would not serve any good end or purpose. *People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 578-79, 170 N.E.2d 605.

In a case of this nature, one of the obvious questions to consider is the motive of Northfield in seeking to undo an act that it freely performed years ago pursuant to a major, regional joint planning effort that culminated in a cooperative agreement among the affected units of local government. Another concern is whether the interests of residents of the affected territory would be served or harmed by Northfield's requested relief.

JURISDICTIONAL CONSIDERATION

■■ We do agree, however, that local government units have limited authority and may not expect enforcement of contracts they enter into without authority. See *Village of Long Grove v. Village of Kildeer* (1986), 146 Ill. App. 3d 979, 497 N.E.2d 319, *appeal denied* (1987), 113 Ill. 2d 586, 505 N.E.2d 363 (agreement between two villages limiting the ability of each to annex property beyond their agreed upon boundaries was invalid as unauthorized assumption of municipal power); accord *Village of Lisle v. Village of Woodridge*

(1989), 192 Ill. App. 3d 508, 548 N.E.2d 1337 (provision of boundary-line agreement prohibiting annexation was void and unenforceable)(noting that while 1987 statutory amendment now permits such acts, amendment would be given prospective effect only).

At the heart of Northfield's case is a challenge to the jurisdiction of park districts, acting singly or in concert, to deviate from the statute that requires a majority of affected landowners to file a petition requesting disconnection of the territory from a particular unit of local government. According to Northfield, strong public policy reasons mandate strict compliance with the Park District Code's provision that the landowners must submit and sign such a petition before park district boundaries can be altered.

Northfield notes that a park district is organized when resident voters of the involved area decide to organize it by filing a petition with the circuit court seeking to have the question submitted to the local electorate. (Ill. Rev. Stat. 1989, ch. 105, par. 2—2.) According to Northfield, to allow circumvention of the electoral mandate by permitting disconnection without the requisite landowner petition would be to disfranchise the original petitioners and the electorate. See *Page v. City of Hickory Hills* (1973), 10 Ill. App. 3d 1072, 1076, 295 N.E.2d 518 (legislature intended that the persons primarily responsible for the decision to annex or disconnect property are the citizens themselves); see also *People ex rel. James v. Chicago, Burlington & Quincy R.R. Co.* (1907), 231 Ill. 463, 83 N.E. 219 (landowner's petition to disconnect was a condition precedent to the exercise of the village's jurisdiction, and signature of owner's tenant was not sufficient).

We agree that the argument is valid as far as it goes, but under the specific circumstances of this case we disagree with Northfield's conclusion that the actions and ordinances of the affected government units are void *ab initio*, simply because the landowners who were given notice of the boundary planning did not actually file a petition requesting disconnection. Undoubtedly, the filing of such petition generally should be viewed as a condition precedent to the passage of disconnection ordinances because it is the landowners who pay the real estate taxes and receive the services of the park districts. In the pending case, however, no landowner is challenging the disconnection and annexation of the affected territory. Rather, one park district out of several local governmental units is repudiating its continued participation in the Techny land use and boundary agreement.

The ordinances now under attack were enacted to further the collective will and intent of local government units attempting to facili-

tate land planning that would most effectively serve the needs of the most residents. The local governmental units were acting pursuant to authority that they believed was granted to them under the then new constitution and statutory law intended to encourage intergovernmental cooperation. Moreover, defendant park districts assert that public, informational meetings were held and that the affected landowners and residents did not object to the demarcation of the park districts' jurisdictional boundaries. The Techny Agreement itself was the product of many hours of planning to devise development standards, land use and density plans, drainage scenarios, and demographic projections. The comprehensive scheme was intended to provide future stability to the undeveloped Techny area and save it from piecemeal, poorly coordinated and inconsistent land uses that might arise if local entities engaged in land wars.

In our opinion, the dispositive question is whether Northfield Park District, a party to the Techny land use and boundary agreement, can *now* raise a challenge to Northfield's 1976 disconnection ordinance. (See *People v. Maxon* (1891), 139 Ill. 306, 28 N.E. 1074 (village estopped from denying validity of its own disconnection ordinance seven years after it took effect, even though passage of ordinance was not in conformance with statute requiring majority of elected members to pass ordinance); *People v. City of LeRoy* (1920), 293 Ill. 278, 127 N.E. 695 (the State, as petitioner in *quo warranto* action, was barred by *laches* from challenging void annexation of land into the city).) Glenview and Northbrook surely relied on Northfield's disconnection ordinance as a necessary step in effectuating their own annexation of the territory.

At the time the participating parties were extensively deliberating the terms of the Techny Agreement, Northfield never suggested that the agreement violated State law. It never attempted to withdraw from or distance itself from the actions of NIPC. In fact, as defendants point out, the chairman of NIPC at the time was also the Village of Northfield's manager and he presented the boundary changes at a meeting for formal action of NIPC. A representative of the Northfield Park District also attended that meeting.

The record reveals, further, that the legality of the Techny Agreement was specifically explored by attorneys in a nonadversarial context and they concluded that the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §10) as well as provisions of the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1975, ch. 127, par. 741 *et seq.*) provided authority for the collective actions of the local governments in this case. It is not for this court to determine whether such legal

opinion was correct, nor is this court required to determine the validity, enforceability, or wisdom of the Techny Agreement itself.

But even assuming that we were to find that Northfield Park District lacked authority to disconnect its territory in the manner in which it did, we are not persuaded that it may now benefit from its own violation of the law by a belated concern for the "public" or for property owners who have indicated no desire to be restored to Northfield Park District. To allow one participant who fully endorsed the Techny land use and boundary agreement to change its mind regarding the legal sufficiency of its own disconnection ordinance, years after the fact, could only make chaos out of the most carefully considered efforts in intergovernmental planning agreements.

■■ We conclude that the actions of Northfield and defendants should not be viewed as *ultra vires* exercises of authority subject to nullification. We do not wish to gloss over well-founded challenges that may be brought when local government units undertake actions that are found to be in contravention of State annexation laws. Northfield cites ample authority to support the general principle that territory cannot be annexed in the absence of statutory authorization (see *People ex rel. La Salle National Bank v. Hoffman Estates Park District* (1985), 134 Ill. App. 3d 571, 481 N.E.2d 12, *appeal denied* (1985), 108 Ill. 2d 567) and that petitions to disconnect or annex may be found defective on jurisdictional grounds when they fail to comply with statutory requirements (*e.g., People ex rel. James v. Chicago, Burlington & Quincy R.R. Co.* (1907), 231 Ill. 463, 83 N.E. 219; *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, 461, 513 N.E.2d 408, *appeal denied* (1988), 118 Ill. 2d 551, 520 N.E.2d 392 (erroneous inclusion of land that is not subject to annexation invalidates petition for annexation)). Nevertheless, the cases and theories Northbrook cites are of limited relevance to the actual circumstances of this case, for the reasons we have discussed. If this court strikes down as void the 1976 disconnection ordinance of Northfield and the annexation ordinances of Glenview and Northbrook, we would be upsetting a long-standing ordering of local governmental affairs that came about from good-faith negotiations of cooperating governmental units, pursuant to their belief that they were acting in accordance with the law. We do not necessarily view the failure to obtain a landowner petition in this case as technical; however, neither do we find it jurisdictional in the sense put forth by Northfield. Accordingly, we decline to nullify the challenged ordinances.

AFFIRMATIVE DEFENSES

■■ We believe that the pending case is a good example of the situation for which time-barred defenses are designed. While we accept, for purposes of this appeal, the fact that a park district's challenge to a disconnection of territory may involve a public interest, that does not mean that periods of limitation and equitable doctrines do not apply.

In the hopes of increasing its tax base, Northfield is seeking to reclaim territory it now contends never legally passed from its boundaries. At the time the territory was disconnected, most of the land was tax exempt because it was owned by religious organizations. The record indicates that Glenview and Northbrook were willing and able to take over responsibility for providing recreational services for territory that they hoped would support increasing numbers of (tax-paying) residents. At the same time, Northfield apparently did not wish to expand its size or services to a significant degree. Based on their mutual understanding and intent, the affected governmental units treated the land as being part of the Northbrook and Glenview Park Districts for 13 years. Now, apparently reevaluating the wisdom of that decision, Northfield would avoid the agreement and nullify its own ordinance. This in turn would effectively repeal the annexations of the other two communities. For these significant reasons, we cannot view Northfield's legal theories in isolation from the facts.

STATUTE OF LIMITATIONS

Northfield contends that statutes of limitation and the doctrines of *laches* and estoppel do not apply to a park district enforcing a *public* interest. In support, Northfield cites *City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874. In *Shelbyville*, a municipality was allowed to maintain an action against a defaulting home builder who had failed to properly construct certain streets in a subdivision. The court rejected the builder's contention that a statute of limitations barred the suit, and in so doing analyzed the limited circumstances in which a statute of limitations does not bar a governmental body from asserting its "public" rights. The court considered that the construction of streets was public in nature.

In this case, however, defendants contend that because *quo warranto* requires the pleading of a *private* interest, Northfield cannot pursue *quo warranto* relief and at the same time avoid the statute of limitations. See, *e.g., Schallau v. City of Northlake* (1979), 82 Ill. App. 3d 456, 463, 403 N.E.2d 266 (private individual seeking *quo*

*warranto* relief must specifically plead a personal, private interest in the matter to have standing to maintain *quo warranto*).

Central to the controversy is the recognition of competing legislative policies, or, at the least, differing viewpoints as to what is in the "public" interest in this case. The State's Attorney and Attorney General have found no statewide public interest to be vindicated. On the contrary, the public affected by this boundary dispute consists of the residents and landowners of the Techny area. It may be that the affected landowners whose signatures were never formally obtained on a disconnection petition could challenge the actions of their park district board and the ordinances enacted to transfer the jurisdictional boundaries. (See *People ex rel. La Salle National Bank v. Hoffman Estates Park District* (1985), 134 Ill. App. 3d 571, 481 N.E.2d 12.) In the pending case, however, the sole objecting party is the Northfield Park District's current board. Nothing in the briefs or record suggests that the Techny area residents are clamoring to unravel the 1976 boundary agreement and ordinances that resulted in the current park district boundaries.

On the contrary, several *amicus curiae* briefs have been filed on behalf of affected residents or other interested parties who support the 1976 disconnection and annexations and who do not want to be restored to the boundaries of Northfield. For example, the North Valley Lo Condominium Association's *amicus* brief states that it "wants North Valley Lo to remain in the Glenview Park District where it has been for the past 14 years" and that it "does not object to the 1976 disconnect by Northfield." The brief also asserts that the disconnection "was highly publicized," with an informational meeting held for the interested landowners. The North Valley Lo brief contends that its members, who have enjoyed the Glenview Park District facilities and paid taxes to Glenview, would immediately petition to disconnect from Northfield in the event the territory were restored to Northfield's boundaries.

The Society of the Divine Word (the Society) also filed an *amicus* brief. The Society has owned a 773-acre tract of land in the Techny area for over 100 years. The Society states its objection to Northfield's attempt to nullify its 1976 disconnection ordinance. A large portion of the land owned by the Society is within the Northbrook Park District, and the Society plans to grant long-term leaseholds to developers and to sell land for the building of single-family residences. The Society points out that there is a "compelling interest in favor of leaving the existing park district boundaries as they are. This will ensure that the citizens and electors who will reside on the

Society's property and within the boundaries of the Village of Northbrook will have access to the existing and future park facilities which were planned and developed by the park district of Northbrook with the property owners' precise interests in mind. Furthermore, the families who purchase the property the Society has designated for single-family residences will be able to use the park district facilities closest to their homes."

Other *amicus* briefs were filed by various affected school districts, as well as the Villages of Northbrook and Glenview, and a developer, Marathon U.S. Realties, Inc. Each gives sound reasons in support of denying Northfield Park District's petition for *quo warranto*.

We conclude that Northfield cannot avail itself of a public interest exception to the application of the statute of limitations.

According to defendants, the applicable statute of limitations in this case is section 3—14 of the Park District Code (Ill. Rev. Stat. 1989, ch. 105, par. 3—14), which provides:

"Neither the People of the State of Illinois nor any person, firm or corporation, public or private, nor any association of persons shall commence an action contesting either *directly or indirectly* the annexation of any territory to a park district unless initiated within one year after the date such annexation becomes final or within one year of [the effective date of this amendatory Act of 1975] ***. This amendatory Act of 1975 shall apply to annexations made prior to the effective date of the Act as well as those made on or after the effective date." (Emphasis added.)

■ Since Northfield is challenging not only its own disconnection ordinance but the annexation ordinances of Glenview and Northbrook, it appears from the above statute of limitations that this suit is time barred. In *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076, the Illinois Supreme Court held that when statutes of limitations expressly apply to the government, the limited common law exception for governing bodies is superseded. Only when statutes of limitations do not expressly apply to government units can the courts consider whether to exempt them on the basis of the public interest exception. The current board of the Northfield Park District impliedly comes within the provisions of this section, and even assuming it does not, we find that no public interest exception pertains under the facts.

Another *quo warranto* limitations period is found in the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 18—104), which bars challenges to the legality of the organization of any politi-

cal subdivision including park districts after such entity "has been in de facto existence for a period of 3 years." Under this provision, which does not apply directly to the circumstances of this case, even fundamental defects in the organization of a political subdivision cannot be brought after the time period prescribed.

In *People ex rel. City of Des Plaines v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 807, 813-14, 331 N.E.2d 373, the court noted that after the one-year limitations period for challenges to municipal annexation, the only question that may be considered is whether the annexing ordinance was void *ab initio* for want of subject matter jurisdiction. By a 1981 amendment to the statute of limitations, however, even "void" municipal annexations, those effected without subject matter jurisdiction, may not be challenged in *quo warranto* after one year. See Ill. Rev. Stat. 1989, ch. 24, par. 7—1—46. But *cf. People ex rel. La Salle National Bank v. Hoffman Estates Park District* (1985), 134 Ill. App. 3d 571, 481 N.E.2d 12 (one-year statute of limitations would not be applied against *property owner's* challenge to a park district's annexation of his property, which was effected *without notice* and in violation of State law that limited amount of acreage a park district could annex without notice).

The foregoing indicates that the legislature has created fairly short limitations periods for challenges to government actions, even those that may be viewed as void for failure to conform to the law. We believe that Northfield's petition for *quo warranto* is barred by the one-year statute of limitations set forth in section 3—14 of the Park District Code, because Northfield is challenging the annexation of the Techny land to the park districts of Glenview and Northbrook. We further find that no facts exist to justify a "public interest" exception to the statute of limitations. Nor does this case fit within the rationale of the *Hoffman Estates* case.

ESTOPPEL AND *LACHES*

Extended discussion of the other affirmative defenses is not necessary in light of our holding. Nevertheless, we do find appropriate the application of the equitable defenses of estoppel and *laches*.

■ To establish estoppel there must be an affirmative act by the unit of government which causes the relying party to substantially change its position. *E.g., Haeflinger v. City of Wood Dale* (1984), 129 Ill. App. 3d 674, 677, 472 N.E.2d 1228 (noting that the affirmative act which induced the reliance must be an act of the governmental unit itself, such as a legislative act of the governing body); *American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115

Ill. App. 3d 342, 347, 450 N.E.2d 898 (noting that estoppel is not favored with respect to government bodies acting in a governing capacity).

Support for applying estoppel in this case is found in *People v. Maxon* (1891), 139 Ill. 306, 28 N.E. 1074. There the Illinois Supreme Court held that units of local government can be estopped to deny the validity of a duly enacted disconnection ordinance, even where the disconnection ordinance does not comply with State law. In that case a village passed a disconnection ordinance that was approved by a majority of the members present, but not by a majority of the elected members, which was required by statute. Thereafter, the ordinance was treated as valid by village officials as well as officials of the township to which the territory passed following disconnection. During a seven-year period the township levied taxes and made roadway improvements for the territory. The village subsequently brought a *mandamus* action against the county clerk alleging that its own disconnection ordinance was invalid and that the village should receive the tax benefits from the territory.

█ The supreme court held that the village was estopped to deny the validity of its own disconnection ordinance. We find the situation in *Maxon* similar to that of the pending case and believe Northfield similarly should be estopped from challenging its disconnection ordinance. While Northfield asserts that the defect in *Maxon* was merely "procedural," while the lack of a landowner petition in the pending case is "jurisdictional," such a position sacrifices reality in favor of fine, academic distinctions. If the legislature had intended that all "jurisdictional" defects were preserved for collateral challenge under the common law, regardless of the passage of time, the statutes of limitation described above would not have been written. Under those enactments, even "void" annexations and *de facto* government units become immune from attack after the passage of a few years.

The briefs set forth the evidence relating to the estoppel defense but we find it unnecessary to include a detailed recitation here. Northfield primarily contends that Northbrook and Glenview have not shown their reasonable reliance on the disconnection ordinance to their substantial detriment. Much of this argument focuses on the question whether the two communities could establish a material detriment when it appears that they had plans to provide improved services and park facilities even if they did not annex the Techny property. In our view, however, future plans for annexed territory may be considered in the estoppel context, where, as here, the whole point of the boundary agreement was to facilitate long-range planning and

maximize effective land use for the greatest number of residents, present and future. Consequently, the element of substantially changing one's position in reliance upon the affirmative actions of others has been met in this case. See also *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957.

The doctrine of *laches* is also a valid defense to this action. (*E.g., People v. City of LeRoy* (1920), 293 Ill. 278, 127 N.E. 695.) Like the statute of limitations, *laches* is a defense based on the passage of time, and in this case Northfield Park District's attempt to return to 1975 and start over must fail. In reliance on the Techny Agreement, the affected governing bodies have entered into a complicated set of relationships, practices, and expectations. The *amicus* briefs also demonstrate that a substantial number of interested parties actively oppose the return of the disconnected property to Northfield.

We conclude that the record contains adequate evidence to support the application of the doctrines of estoppel and *laches*. Accordingly, we hold that the trial court did not abuse its discretion in declining to permit Northfield to maintain its complaint for *quo warranto* relief.

Because of our disposition of the case, we decline to reach the challenge directed at the trial court's acceptance of *amicus curiae* briefs. The *amici* are interested parties, some of them landowners, and Northfield's assertion of prejudice cannot block the application of common sense. This court has reviewed the *amicus* briefs filed herein to determine if any landowner or other interested party joined with Northfield in objecting to the Techny Agreement or to the disconnection and annexation ordinances in issue. None did.

For the foregoing reasons, we affirm the trial court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.